### Edwards v. Commonwealth.

(Decided Sept. 28, 1934.)

J. S. OWSLEY and C. C. WILLIAMS for appellant.

BAILEY P. WOOTTON, Attorney General, and DAVID C. WALLS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

Emmet Edwards has been convicted of robbing the Crab Orchard Banking Company, has been sentenced to seven years' imprisonment, and has appealed.

## The Evidence.

Two men entered this bank about noon on July 7, 1933, and by putting the cashier in fear, by exhibition of guns, robbed it of $2,748.63 in currency, and of $10,-000,. or $15,000 in securities, the latter belonging to its customers. They then locked the cashier in the vault and escaped. There is evidence that shortly thereafter two men driving rapidly in a blue Chevrolet roadster (this we call car No. 1) came from the direction of Crab Orchard to an underpass under the L. & N. R. R. They got out of the blue roadster and got into a maroon or wine-colored Chevrolet coupe with green wheels that had been parked there a few moments before, and left, going back through the underpass and in the direction of Crab Orchard. They had with them two guns and a sack or sacks which they transferred to the wine-colored car with the green wheels; this we call car No. 2.

## Defendant's Connection.

The defendant had been seen that morning at a rock quarry near Crab Orchard with two men who got in a car and concealed their features. In a few minutes Edwards got in the car and left with them. Later in the day, and near noon, Edwards was seen riding in a wine-colored car with green wheels. This car stopped near the Edwards home, he got out and went in, and the other two men in the car left, going in the direction of Crab Orchard. About a half hour later this wine-colored car (No. 2) came back from Crab Orchard and turned into a road known as the Deep Well Woods road. Later Emmet Edwards was seen driving this car (No. 2) and driving fast. Later this car (No. 2) was found backed off the road and concealed behind some willows.

## Defendant's Story.

The defendant tells a puny tale that in the early afternoon he started out to get a mess of fish. He heard a car coming; he thumbed it for a ride. The car stopped and he got in. He claims that he did not know the occupants. They were excited, were driving fast, and refused to let him out. They had a machine gun. Finally they came to a place where a car was parked. This is car No. 3 in the transaction. These two men got out of car No. 2 and told him to get under the wheel of the car he was in (No. 2) and drive off. This was the wine-colored car with the green wheels (No. 2), and they told him, so he says, it would be too sad if he opened his mouth. He then drove to and concealed it (No. 2) in the willows mentioned. Then he started home. About a mile from where he left the car some officers picked him up, which he says was the first he had heard of the robbery of the bank. He expressed great surprise, but, strange to say, instead of mentioning that he had been kidnapped that afternoon and how he had been treated, he told them he had been killing fish. They came to a road intersection, and, instead of telling the officers the direction he now says his alleged kidnappers had gone, he suggested to the officers that perhaps they had gone in the direction of Maywood, which is in the opposite direction from the place where his alleged kidnappers had got out of the wine-colored car (No. 2) and forced him to drive it away.

## The Money Found.

There was some evidence that one of the men seen with Edwards that morning at the rock quarry and that

was riding around in this wine-colored car (No. 2) was Alfred Moore. Moore was arrested in Tennessee, and the officers found $562 in a suitcase belonging to him. Some $300 of the money taken from the bank had just come in that morning; it was in new $1 bills. Something like 150 such bills were recovered.

### The Securities Found.

On a side road in or near this Deep Well Woods road which Edwards had traveled on the afternoon of this robbery there is a culvert, in which there was a broken plank. Some days after the robbery a Mr. Catron passed there. He dismounted and replaced the plank. Something was obstructing the flow of the water, and in removing that obstruction Mr. Catron found some notes, school bonds, shares of Crab Orchard Bank stock, and other papers, which he delivered to the assistant cashier of the bank. A day or so after that, having got out on bond, Edwards was seen apparently looking for something at or near this culvert, and, when he saw the witness, Edwards got in his car and left.

### The Conspiracy.

Since Edwards was not at the bank, there participating in the robbery, he cannot be convicted therefor unless he had conspired with the active participants to aid them in its doing or to assist them in escaping after it was done.

The court in the instructions told the jury:
"* * * And if you believe beyond a reasonable doubt from the evidence in this case that said Emmet Edwards wilfully and feloniously provided the means of transportation to or from said Bank, or aided and assisted therein, and feloniously being then and there present in convenient distance to receive, hide and conceal the automobiles used in said robbery, and in going to and from said Bank, and abetting and aiding and encouraging therein and present at a convenient distance for said purpose, you will find the defendant, Emmet Edwards guilty. * * *"

That does not mean Edwards must own all or any of the three cars used, but, if he owned none of them, and only knowingly placed or helped to plan the placing of any of these three cars, or knowingly and willingly took any part in the planning of the placing, in the placing, the driving or the concealment of any of them, he

was guilty. Of course, the evidence of his participation in this conspiracy is only circumstantial, but such is so almost always. Parties forming a conspiracy do not send a herald with a horn to sound alarm and make announcement of what they are doing or going to do, as is done when a circus comes to town, but they plan and operate in secret, and we must discover what they have done from the circumstances of its doing. Space forbids our recounting here all of the various circumstances connecting Edwards with what was done, but we have given enough to show his guilt was properly submitted to the jury and that its verdict is sustained by the evidence.

### Alleged Errors in the Evidence.

Edwards objected to a number of questions relative to the identification of Moore and of the money found in Moore's suitcase, and his objections were overruled. This was not erroneous. Of course, Moore's guilt is not the guilt of Edwards unless he had some part in the doing of what Moore is said to have done, which was properly submitted under the instruction from which we have quoted.

The defendant testifies the two men with whom he was seen at the rock quarry on the morning of the robbery were Ebb Jones and Clarence Jones. Their home is in Rockcastle county, but they are now somewhere in Ohio. When Edwards was first tried on November 21, 1933, the jury failed to agree. He was convicted on his second trial, which was begun on March 6, 1934. These Jones men did not attend either trial. The defendant took no steps to procure their depositions as he may do under section 153 of the Criminal Code of Practice, and on this trial he was on cross-examination and over his objections asked if he did not know he would want them as witnesses; if he had made any effort to get their depositions; and if he did not know they would not come here and swear the things to which he wanted them to swear. If Edwards could have produced these men to show it was they and not Moore and his companion with whom Edwards met at the rock quarry on that morning, it would have been of the utmost importance to him.

His failure to produce Ebb and Clarence Jones, who may fairly be called "Key witnesses," was a legiti-

mate subject of cross-examination. It bore upon the credibility of the testimony of the defendant.

Mr. Horton had testified to seeing Edwards and two strangers at this rock quarry; that he stayed there ten minutes; that Edwards did not introduce him to his friends; that Edwards got in the car and left with them; that these men said nothing to him, though he was practically right at them; that they endeavored to conceal their faces; that one of them was of the type of Fletcher and the other of the type of Moore; and that the one with Moore's features drove the car away. Now, so long as that testimony remained undisputed except by Edwards, his anemic account of his kidnapping that afternoon is not very convincing.

Edwards realized that, and he asked the clerk of the circuit court to testify, and the commonwealth's objection was sustained. Thereupon Edwards made this avowal:

> "The Clerk if allowed to testify would truthfully state that on the 26th day of Feb. 1934 when this case was first called for trial at the present term of Court she issued a warrant of arrest for Clarence Jones and Ebb Jones directed to the Sheriff of Rockcastle County, that warrant of arrest was returned by the Sheriff with the following indorsement on it 'Executed on H. L. Lyons, others live in Rockcastle County but are now out of the County this March 4th 1934 D. G. Clark Sheriff Rockcastle County by C. M. Doan, Deputy Sheriff.'"

The court's action was not erroneous. If it be admissible at all, which we need not decide, the best evidence about this warrant is the warrant itself or an official copy of it, not what the clerk may testify about it.

### More About the Kidnapping.

It is not unbelievable that robbers fleeing from their crime would allow an innocent yokel to ride with them, and would leave him with their car for the purpose of making him the scapegoat, but that an innocent man so treated would conceal and disable the car and would not indignantly relate the occurrence to the first reputable man he saw is much more than the average reasonable man will believe.

Edwards has been ably defended by counsel who watched every step. He has been fairly convicted. The judgment is affirmed.