## STATE OF HAWAII *v.*
## RICHARD TOSHISHIGE YOSHINO.

### No. 4230.

June 5, 1962.

Tsukiyama, C. J., Cassidy, Wirtz,
Lewis and Mizuha, JJ.

OPINION OF THE COURT BY LEWIS, J.

This is an appeal from a judgment of January 17, 1961, entered on a verdict finding defendant guilty of robbery first degree.

The indictment averred in substance that on September 6, 1959, defendant, being armed with a dangerous weapon—a gun—and with the intent, if resisted, to kill, maim, wound and inflict other severe corporal injury, robbed Harry K. Sonoda of $400 by force and putting him in fear. We will refer to this matter as the Sonoda robbery. It is the same matter for which other defendants were tried and convicted in another case; the judgments

were affirmed in *State* v. *Pokini and Villita,* 45 Haw. 295, 367 P.2d 499.

The present defendant previously was tried for and convicted of the robbery of Kalani Fernandez which occurred earlier on the same day, as set out and affirmed in *State* v. *Yoshino,* 45 Haw. 206, 364 P.2d 638. See also *State* v. *Pokini and Villita, supra,* affirming the conviction of the other defendants for this robbery as well. In the present case the State prosecuted defendant for the Sonoda robbery on the theory, as the record shows, that he was a principal therein although he did not himself hold a gun on Sonoda or take the $400 from him.

According to the evidence in this case, in the early morning hours of September 6, 1959, Fernandez, who had with him two companions, Mervyn Hezekia and Kenneth Harada, was driving his black 1957 Oldsmobile on Date Street at the intersection of Kapiolani Boulevard, when he was accosted by the driver of a white Mercury who asked to speak to Fernandez "inside Iolani School park." The Oldsmobile followed the Mercury to the school grounds. There were four occupants of the Mercury. Two got out. Hezekia and Harada were told to get into the Mercury and did so, getting into the back seat. Two men from the Mercury got into the Oldsmobile.

Upon leaving the school grounds the occupants of the Mercury were, besides the driver, the defendant Yoshino in the front seat, and Hezekia and Harada in the back seat. The occupants of the Oldsmobile were Fernandez and the two others who were originally in the Mercury. From the school grounds both cars went up to Papakolea, in the Tantalus area. En route—as testified by Harada—Yoshino and the driver of the Mercury "was saying something about where the money stay * * * [w]ho has it." According to the witness, "they said they knew everything about the money—how we got it, who has it and every-

thing." Yoshino had a gun and "said he'll shoot if we try any funny stuff." "They said they're not kidding. If we try anything foolish, they'll shoot." Harada further testified that Yoshino "showed us bullets."

The Oldsmobile arrived at Papakolea first, and about 3:00 A.M. parked outside the house in which Harry Sonoda lived, on the opposite side of the street. The Mercury stood by a corner. It was seen in the vicinity by an occupant of the house, Mrs. Ravencraft, Harry Sonoda's mother, who testified that "a while" after the arrival of the Oldsmobile a white Mercury went down to the end of the street, turned around, and parked next to the house on the same side of the street. Hezekia testified that it parked by a corner and waited there. Harada testified that, sitting in the Mercury, he could see figures going back and forth between the Oldsmobile and the house.

Harry Sonoda and his brother Leroy, who lived in the same house, went outside upon arrival of the Oldsmobile when they heard the horn. As we have said, the Oldsmobile belonged to Fernandez. He was a cousin of the Sonoda brothers. Fernandez, Hezekia, the Sonoda brothers and others had been at a carnival together the night before. The Sonoda brothers had gone home, but Fernandez and Hezekia had gone to a poolroom, where Harada, who did not know them previously, joined them for drag racing on Date Street. The incident at the Iolani School grounds ensued. From there the scene shifted to Papakolea.

When Fernandez' car came up and the Sonoda brothers went out, Leroy saw that in addition to the Oldsmobile there was a white Mercury parked at the corner on the opposite side of the street. Leroy was ordered back into the house. Harry, upon approaching Fernandez' car, was shown a gun. He testified that "two guys," one outside and one inside the car, had guns, and that he had never

seen them before and didn't know their names. Neither of them was the defendant. The third occupant of the car was Fernandez.

Two guns were exhibited at the trial, and Harry testified that one of them, a .38 caliber revolver, was "the one the guy outside of the car had." The other, a .45 caliber automatic, "look[ed] something like" the gun the "other guy" had.

The two men asked Harry "Where the money?" He told them "inside the house." He went into the house accompanied by one of the men, and "gave him the money." He testified that he was shown a gun and was afraid.

Leroy testified that after he returned to the house Harry came in "with another guy" who had his hand under his T-shirt but while in the house took it out and Leroy saw a .38 caliber revolver in his hand. The man laid it on the bed and searched Harry.

The money taken was stolen money. In addition to one thousand dollars which was being held for one Norman K————, there was taken one hundred dollars given Harry by his brother Leroy, and three hundred dollars given him by Norman K————. The man went out of the house with the money, and he or "somebody from the Oldsmobile" was seen by Harry walking over to a white car parked on the other side of the street.

Mrs. Ravencraft, Harry Sonoda's mother, testified that she saw Harry outside, saw a man follow Harry into the house, and later saw the man leave the house and go to the white car that was parked on the same side of the street as the house. There he talked to somebody. The man returned to the black car, which she previously had identified as Fernandez' car. The white car left first, then the black car turned around and left.

Hezekia, who had been waiting in the white car with the others who had come in that car, including defend-

ant, testified that he saw "One guy wen' bring some money over." He thought it was the driver to whom the money was given. The money then was counted. Harada testified that the money first was given to "The guy opposite the driver" who according to other testimony was Yoshino, and this man then gave it to the driver. He testified that the man who brought the money over "said there still was more." As to the counting of the money he testified that the white car went to another house, then drove in "somebody's driveway," and "It was there that they counted the money." Further, he testified that: "Before we left the second house, they said they was going to wait someplace. * * * We was going ahead." The record then shows the following which is noted in connection with Specification of Error 2, later considered:

"Q. To meet them some place?

"A. Yes.

"Q. The occupants of Kalani's car, is that right?

"A. Yes."

The occupants of the Mercury waited about forty-five minutes in the above-mentioned unlocated driveway. Then they proceeded to a service station where Hezekia and Harada were given money to catch a taxi and dropped off.

Mrs. Ravencraft testified that after the black car left their house it returned with Norman K————, a friend of Leroy's. A further search for money ensued. At some point during or after this she called the police.

A police officer, Donald Lee, testified that at approximately 3:28 A.M. on September 6, 1959 he received a call on the police radio "to the effect that a 1957 Oldsmobile was in the Tantalus area and the caller had stated that the occupants of the car were involved in a burglary." He headed toward the Tantalus area and intercepted a black 1957 Oldsmobile with three occupants of whom one, sitting alone in the rear, identified himself as Kalani

Fernandez. The other two were Pokini and Bellita (referred to in the other two cases as "Villita"). Officer Lee arrested the occupants. Upon searching the car he found two pistols under the right front seat. These were the .45 automatic and the .38 revolver that earlier in the trial had been shown to Harry Sonoda and concerning which he had testified as above set out. The guns were admitted into evidence over objection.

Defendant contends that the two men found in the front seat of the 1957 Oldsmobile when Officer Lee stopped it were not sufficiently identified as the same who robbed Harry Sonoda, that there is nothing to show that the two guns found in the car by Officer Lee were used in the robbery, that the guns should not have been admitted in evidence, that the names of Pokini and Bellita "were erroneously interjected by the Prosecutor, and obviously prejudiced the Jury," and that there was insufficient competent evidence.

It is true that, except for Officer Lee, only Harry Sonoda testified concerning the names of the two men in Fernandez' car, the black Oldsmobile, and his testimony merely was that the names of Bellita and Pokini became familiar to him "When that thing happened," and that he *thought* those were the names of the two men who came in Fernandez' car. This evidence was brought out on redirect after defense counsel on cross-examination of Harry Sonoda had developed from the witness that he did not know the race or nationality of the man who stayed in the Oldsmobile during the robbery, except that he wasn't Japanese, and that the other one "Could have been Hawaiian or Puerto Rican," that later he saw both men at the police station and at that time thought both were Hawaiian. The evidence on redirect as to the names that became familiar to Harry Sonoda as being the names of the men in the Oldsmobile

merely clarified the testimony elicited on cross-examination that he had seen both men at the police station. We fail to see how the interjection of the names could have prejudiced defendant.

The next question is whether the men and guns found in the car were connected by sufficient testimony with the robbery at Papakolea and that robbery with the defendant. If so, the guns were admissible as articles taken from co-conspirators under the principles set out in *State* v. *Yoshino*, 45 Haw. 206, 364 P.2d 638.

The 1957 black Oldsmobile, which belonged to Kalani Fernandez, the cousin of the Sonoda brothers, was identified throughout, and when Officer Lee stopped the car Fernandez still was in the rear. The circumstances in evidence were sufficient to connect the men and guns found in the car with the robbery. See *Edwards* v. *Commonwealth*, 255 Ky. 492, 74 S.W.2d 949. The evidence also was sufficient to implicate defendant in the robbery though he did not go into the house or himself approach Harry Sonoda. As we have seen, when he was en route to the scene in the Mercury, his participation in the scheme was revealed by his conversation with the driver concerning the money, and by his threats to shoot Hezekia and Harada, the two removed from the Oldsmobile to the Mercury, if they tried "any funny stuff." Upon arrival at the scene, the occupants of the Mercury parked and plainly were waiting to receive the fruits of the crime which they subsequently received. Upon this evidence the trial judge was more than justified in admitting the evidence in question.

The conclusion to be reached from the chain of events properly was left to the jury. They were instructed that: "Before you can return a verdict based in whole or in part upon circumstantial evidence, the facts in the chain of circumstances must all be consistent with guilty and

inconsistent with every reasonable supposition of innocence," with other instructions as to circumstantial evidence. Clearly, the evidence that defendant was present as a principal as defined by R.L.H. 1955, § 252-1, was sufficient to go to the jury, and even if he had waited elsewhere and had not been present at the scene, the evidence would have been sufficient to go to the jury on the theory that he was chargeable as a principal with the crime committed by his co-conspirators. As we previously have held: "* * * when there is a conspiracy among several persons to commit a crime, and in its furtherance the crime agreed to be committed is accomplished by one of them, any or all of the conspirators * * * may, upon proper proof, be convicted [of the crime thus committed] although the indictment does not allege a conspiracy * * *." *Territory* v. *Blackman,* 32 Haw. 460, 464; *State* v. *Yoshida,* 45 Haw. 50, 361 P.2d 1032. See also *Territory* v. *Ebarra,* 39 Haw. 488, 491; *Territory* v. *Bollianday,* 39 Haw. 590; *State* v. *Carvelo,* 45 Haw. 16, 361 P.2d 45; *State* v. *Jones,* 45 Haw. 247, 365 P.2d 460, relating to persons present who are deemed principals under R.L.H. 1955, § 252-1.

Since the evidence was sufficient to go to the jury, we find without merit the specifications of error asserting that a judgment of acquittal should have been ordered entered. The only argument not so far considered is the identification of defendant as the "Japanese guy" who was sitting next to the driver of the Mercury. Hezekia pointed him out in the courtroom as the one he was referring to. Harada testified that the person next to the driver was "a Japanese boy," but was not sure whether it was the defendant though at one point calling him "Yoshino" in his testimony. Hezekia's testimony was sufficient to take the case to the jury on the question of identity, and any weakness in the case due to Harada's

uncertainty was for the jury to consider. There applies the well settled rule that, in testing the legal sufficiency of evidence, it must be considered in its strongest light for the State. *State* v. *Carvelo, supra,* 45 Haw. at 31, 361 P.2d at 53.

This leaves for consideration specifications 1, 2 and 3 asserting that the trial judge committed prejudicial error in permitting leading questions.

The first of these specifications concerns a series of questions which elicited nothing from the witness, Hezekia, who didn't know the answer. It is contended that the questions were prejudicial anyway. The line of inquiry was whether defendant, from the time the Mercury left the Iolani School grounds, had a gun or something in his hands. The question about a gun was not pressed after objection was made. The form of the question was changed so as to refer to "anything in the hands" of defendant. It does not appear how else the question could have been phrased. No error has been shown. Harada subsequently testified that defendant—whom he referred to as "the guy opposite the driver"—had a gun. There was no prejudice.

The second of these specifications concerns the question asked Harada as to whether the occupants of the Oldsmobile (referred to as "Kalani's car") were the persons for whom the occupants of the Mercury were waiting when, after leaving the scene of the robbery and after going to a second house, they pulled into "somebody's driveway." The questions and answers involved have been set out above. It is contended that "there had been no suggestion by the witness that they were waiting for any particular persons." To the contrary, when Harada testified that upon leaving the second house they (referring to those in the front seat of the Mercury) said they were going ahead and would wait someplace, this plainly implied a plan to wait for the occupants of the other car,

the Oldsmobile. Again, we find no prejudice.

The third series of questions objected to as leading occurred during examination of Harry Sonoda. He had testified that before the money was taken he was shown a gun and was afraid. The gun was pointed at him, he testified. He further said that the man who pointed the gun at him said something that he didn't remember. Asked to give the effect, he testified: "Just give me the money, that's all." The prosecutor then asked him over objection on the ground it was leading: "Now, when this guy pointed this gun at you, did he say anything regarding your life?" The witness still said he didn't remember. The State contends that Harry Sonoda was a reluctant witness. In the trial court the State so argued and also asked indulgence because of the lapse of time since the happening of the incident. Previously, the witness had indicated he was finding it difficult to remember what took place, testifying: "I don't remember. It's too long, already."

The matter was one for the exercise of discretion of the trial judge. See *Territory* v. *Slator*, 30 Haw. 308; *Territory* v. *Fong Yee*, 25 Haw. 309, 312; *Ciacci* v. *Woolley*, 33 Haw. 247, 255. It is argued here that the question "was an obvious attempt to exaggerate or implant in the minds of the Jury the idea of force and fear." Counsel evidently is assuming that the prosecutor had no basis for pursuing the question of whether an express threat accompanied the showing of the gun. However, no contention of misconduct of the prosecutor was made at the time. Had such contention been made the court could have taken up the matter out of the presence of the jury. This court cannot assume that the prosecutor was unjustified in pursuing this question. No abuse of the trial judge's discretion has been shown.

Affirmed.

*Daniel G. Ridley* (*Ernest Y. Yamane* with him on the brief) for appellant.

*Herbert H. Tanigawa,* Deputy Prosecuting Attorney, City and County of Honolulu (*John H. Peters,* Prosecuting Attorney, with him on the briefs) for the State, appellee.