**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Joseph Stanley LONG, Defendant-**
**Appellant.**

**No. 15084.**

United States Court of Appeals
Sixth Circuit.

Decided Oct. 14, 1963.

Wolfgang Hoppe, Detroit, Mich., for appellant.

Robert H. Pytell, Detroit, Mich. (Lawrence Gubow, U. S. Atty., Detroit, Mich., on the brief), for appellee.

Before CECIL, Chief Judge, MILLER, Circuit Judge, and BOYD, District Judge.

CECIL, Chief Judge.

Joseph Stanley Long, defendant-appellant hereinafter referred to as the defendant, was convicted on a two-count information. The charges against the defendant were: 1. That he unlawfully and knowingly received and had in his possession a stolen United States Treasury check in the amount of $29.60, with the knowledge that it had been stolen (Sec. 1708, Title 18, U.S.C.), and 2. That he unlawfully and willfully uttered and published said United States Treasury check bearing the forged endorsement of Margaret H. Kessler. (Sec. 495, Title 18, U.S.C.)

The defendant was arraigned before the Honorable Frederick W. Kaess, United States District Judge for the Eastern District of Michigan, on July 31, 1961. He pleaded guilty on this arraignment and his case was continued until September 7th for sentence. When the defendant was brought before Judge Kaess for sentence, he denied that he was guilty and the judge vacated the former plea of guilty and entered a plea of not guilty for him. In a trial to a jury on October 18, 1961, the defendant was found guilty on both counts. The defendant was sentenced to imprisonment for the term of three years on each count, the sentences to run concurrently. This appeal followed.

The alleged forged check was endorsed by the defendant with his true name and cashed by him at First Beer and Wine Store, 471 Abbott Street, Detroit, where he was known. On July 30, 1961, the defendant jaywalked across the street, in front of the Abbott street store. While a Detroit police officer was taking his name and address on this traffic violation, a clerk came out of the store and identified the defendant as the one who had cashed the forged treasury check. The clerk told the police that the defendant was wanted by federal officers on a check charge. The city police officers arrested him without a warrant and took him to the Detroit police headquarters. This was about eight o'clock on Sunday evening.

According to the defendant's testimony, he was questioned for an hour at headquarters about the check and his record. He was questioned again in the morning by the "Bunko Squad." At about 10:30 a. m., on Monday morning, the city police released the defendant into the custody of the federal officers. Investigative Aide Klein of the Postal Inspector's office and a fellow officer brought the defendant from police headquarters to the federal building. He arrived there about 11:00 a. m. After being taken into custody by the federal officers, he was interviewed by Officers Lapham, Gunz and Klein. The questioning by these officers consumed approximately two and one half hours, according to the testimony of the defendant and about one hour, according to the officers' testimony. At the conclusion of the questioning, the defendant signed a confession. The officers first talked to the defendant and then prepared a written statement for his signature. The testimony of Officer Lapham was that he and Officer Gunz started interrogating the defendant at about 11:30 a. m., that at about 12:00 m. they informed him of his rights and that at 12:30 p. m. he signed the confession which was typed in the defendant's presence. Officer Lapham said: "We worked right from the man" in typing the statement. Officer Gunz said they informed the defendant of his rights before the interrogation began.

The United States District Court for the Eastern District of Michigan has no Commissioners. All arraignments are conducted by the judges of the court. Arraignments are regularly held at 11:00 a. m. and at 3:00 p. m. The defendant was arraigned at 3:00 p. m., on July 31st.

One of the questions presented on this appeal is whether the signed confession of the defendant was properly admitted into evidence at the trial. Before offering

the confession, government counsel advised the trial judge that there would be an objection to it and requested a hearing out of the presence of the jury. Such a hearing was conducted and at its conclusion the judge held that the confession was admissible.

Counsel for the defendant objected to the admission of the confession on two grounds: First, that the confession was not voluntary, that it was induced by coercion, threats and promises; second, that there was an unnecessary delay in bringing the defendant before Judge Kaess for arraignment, contrary to the opinion in Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479.

The trial judge recognized that Mallory was controlling and that he was bound to follow it, if applicable to the facts of the case at bar. He held that whether the confession was voluntary was a question of fact for the jury to determine under proper instructions from the court. He determined that there had not been adequate time to arraign the defendant at 11:00 a. m., that 3:00 p. m. was the first opportunity for arraignment and that this was not an unnecessary delay. Further he distinguished the Mallory case from the case at bar on the facts. In the Mallory case, the defendant maintained his innocence for several hours and it was not until he had been interrogated for several hours and subjected to a lie detector test that he changed his story and made a confession. In the case at bar, the judge said the defendant admitted the elements of the crime from the outset of his arrest by federal officers.

The principal issue concerning the admissibility of the confession is whether the defendant was taken before the nearest available commissioner "without unnecessary delay" after his arrest. This is a requirement of Rule 5(a) [1] of the Federal Rules of Criminal Procedure. This rule must be construed in the light of the teachings of the Mallory case where the Court held that the police process used in the arrest of the defendant was in violation of Rule 5(a) of the Criminal Rules. At. p. 453 of 354 U.S., at p. 1359 of 77 S.Ct., 1 L.Ed.2d 1479, the Court said: "In order adequately to enforce the congressional requirement of prompt arraignment, it was deemed necessary to render inadmissible incriminating statements elicited from defendants during a period of unlawful detention."

The rule of the Mallory case was first announced in McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819. The basis of the rule was a statute (Sec. 595, Title 28, U.S.C., 1942) the substance of which is now Rule 5(a) of the Criminal Rules. In Upshaw v. United States, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100, the court followed McNabb and stated the rule of McNabb as follows: (335 U.S. p. 413, 69 S.Ct. p. 172, 93 L.Ed. 100) " * * * that a confession is inadmissible if made *during illegal detention due to failure promptly to carry a prisoner before a committing magistrate*, whether or not the 'confession is the result of torture, physical or psychological * * *.' " (Emphasis added.)

The Court applied the McNabb rule in Anderson v. United States, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829. In that case defendants were arrested by state officers of Tennessee and subjected to detention and long hours of questioning before being turned over to federal officers for arraignment. Tennessee had a statute similar to the federal statute, the substance of which is now embraced in Rule 5(a) of the Federal Rules of Criminal Procedure. There was a working ar-

---

1. "Rule 5. Proceedings before the Commissioner

"(a) Appearance before the Commissioner. An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States. When a person arrested without a warrant is brought before a commissioner or other officer, a complaint shall be filed forthwith."

rangement between the federal officers and the sheriff which led to the abuses which resulted in the illegal detention of the defendants in this case.

In United States v. Carignan, 342 U.S. 36, 72 S.Ct. 97, 96 L.Ed. 48, the Court held that the McNabb rule was not applicable. Here the defendant's confession of murder was not given during unlawful detention, because he was being lawfully detained on another charge although he had not been arrested for or charged with murder when the confession of murder was made.

Two years after McNabb (1944) the Court refused to apply the doctrine of that case in United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140. The Court said at p. 70 of 322 U.S., at p. 898 of 64 S.Ct., 88 L.Ed. 1140: "Obviously the circumstances of disclosure by Mitchell are wholly different from those which brought about the disclosures by the McNabbs. Here there was no disclosure induced by illegal detention, no evidence was obtained in violation of any legal rights, but instead the consent to a search of his home, the prompt acknowledgement by an accused of his guilt, and the subsequent rueing apparently of such spontaneous cooperation and concession of guilt."

The distinction between the doctrines of McNabb and Mitchell was recognized as recently as 1961 in Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037. In note 50, page 599 of 367 U.S., page 1877 of 81 S.Ct., 6 L.Ed.2d 1037, to the opinion in that case, it is stated: "In McNabb, our decision turned on the failure of the arresting officers to comply with procedures prescribed by federal statutes then in effect requiring prompt production of persons arrested for preliminary examination. Compare Anderson v. United States, 318 U.S. 350 [63 S.Ct. 599, 87 L.Ed. 829]. The Upshaw case and Mallory v. United States, 354 U.S. 449 [77 S.Ct. 1356, 1 L.Ed.2d 1479] carried the same exclusionary rule over in implementation of Fed.Rules Crim. Proc., 5(a). Of course, our decision in United States v. Mitchell, 322 U.S. 65 [64 S.Ct. 896, 88 L.Ed. 1140], makes clear that confessions made during the period immediately following arrest and before delay becomes unlawful are not to be excluded under the rule."

Thus it is apparent that the test of the admissibility of confessions under McNabb and Mallory is whether there has been a violation of Rule 5(a) by a failure to take the prisoner before the nearest available commissioner without "unnecessary delay." The trial judge in the case before us found that there was not an unnecessary delay in taking the defendant before an officer for arraignment. The record supports this finding and we are in accord with it. It was said in the McNabb case, 318 U.S. p. 346, 63 S.Ct. p. 615, 87 L.Ed. 819: "The mere fact that a confession was made while in the custody of the police does not render it inadmissible."

See the following cases where it was held that the McNabb and Mallory rule was not applicable. United States v. Leviton, 193 F.2d 848, C.A. 2, cert. denied, 343 U.S. 946, 72 S.Ct. 860, 96 L.Ed. 1350; United States v. Vita, 294 F.2d 524, C.A. 2, cert. denied, 369 U.S. 823, 82 S.Ct. 837, 7 L.Ed.2d 788; United States v. Ladson, 294 F.2d 535, C.A.2, cert. denied 369 U.S. 824, 82 S.Ct. 840, 7 L.Ed.2d 789; United States v. Sailer, 309 F.2d 541, C.A. 6.

The other objection to the admissibility of the confession was based on a claim that it was coerced and not voluntarily made. This was a question of fact and was properly submitted to the jury. Wilson v. United States, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090.

Another assignment of error is that the trial judge erred in permitting the government to introduce into evidence the transcript of the arraignment proceedings wherein the defendant had pleaded guilty. On direct examination of the defendant concerning the voluntariness of the confession, counsel for the defendant asked, "Now, Judge Kaess entered a plea of guilty for you and you waived your rights of Grand Jury?" The de-

fendant answered "Yes." At this point government counsel graciously offered to introduce the entire transcript as the best evidence. After some colloquy between the court and counsel, the transcript was offered into evidence. Counsel for the defendant did not specifically object to its introduction, but asked to have a transcript of the proceedings introduced wherein the plea of guilty was vacated and a plea of not guilty entered. This request was denied.

The objection that counsel for the defendant makes on this appeal is that the transcript of the arraignment was admitted into evidence without the admission of the subsequent proceeding vacating the plea of guilty.

What counsel's purpose was in asking the question concerning the plea of guilty is not quite clear. If the question and answer damaged the defendant's case it was enough that it inured to the benefit of the government. This was no excuse for government counsel to further prejudice the defendant by introducing into evidence the transcript of the entire proceeding on arraignment. This transcript[2] was highly prejudicial to the defendant.

■ When a plea of guilty is vacated by the judge under such circumstances as were involved here, the entire proceedings of entering the plea are a nullity. They can serve no further purpose in the trial. Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009; Oliver v. United States, 202 F.2d 521, C.A. 6; Pharr v. United States, 48 F.2d 767, 770, C.A. 6. See Canizio v. New York, 327 U.S. 82, 87, n. 2, 66 S.Ct. 452, 90 L.Ed. 545.

■ The admission into evidence of the transcript of the arraignment affected the substantial rights of the defendant and was plain error. Rule 52(b), Federal Rules of Criminal Procedure.

■ Finally, the defendant complains that in being tried on an information he was deprived of his constitutional right to be indicted by a grand jury. (Amendment V, U.S.Const.) We find no merit to this claim. The defendant waived the right to have his case submitted to a grand jury which he was privileged to do. (Rule 7(a) and (b), Federal Rules of Criminal Procedure.) The defendant was not prejudiced in being tried on an information instead of an indictment. The trial would be the same under either form of charge. The defendant might entertain a vague hope that a grand jury would not indict him. Since no motion was made in the District Court for a vacation of the waiver of indictment by Grand Jury, we consider that the assignment of error relative to trial on information presents no question on appeal.

The judgment of the District Court is reversed and the case remanded to the District Court for a new trial consistent with this opinion.

2. A pertinent part is as follows (Tr. p. 120–21):
"THE COURT: What do you think you are charged with?
"DEFENDANT: The cashing of a stolen check.
"THE COURT: That is partially true, yes, and the check was made payable to Margaret Kessler?
"DEFENDANT: Yes. I signed it with my name.
"THE COURT: Did you know that it was a stolen check?
"DEFENDANT: Yes.
"THE COURT: In other words, it was in your possession, with knowledge that it was stolen, is that right?
"DEFENDANT: Yes.
"THE COURT: Do you want to plead now?
"DEFENDANT: Yes.
"THE COURT: How do you plead?
"DEFENDANT: Guilty.
"THE COURT: Has anyone promised you anything for your plea of guilty?
"DEFENDANT: No, sir.
"THE COURT: No one has forced you in any way to plead guilty?
"DEFENDANT: No.
"THE COURT: In other words, you are pleading guilty because you really are guilty of this offense, as charged, is that right?
"DEFENDANT: Yes."