STATE OF HAWAII *v.* ROBERT KAIMI CUMMINGS.

No. 4469.

JANUARY 20, 1967.

RICHARDSON, C.J., CASSIDY, WIRTZ,
LEWIS AND MIZUHA, JJ.

OPINION OF THE COURT BY WIRTZ, J.

Defendant-appellant brings this appeal from his conviction for robbery in the second degree under an information charging that he "did steal Five Dollars ($5.00) from John Howard Perillo by putting him in fear * * *." After a jury-waived trial defendant was found guilty and the judgment appealed from suspended the execution of the twenty-year prison sentence for a probationary period of three years while providing specially that defendant "serve weekends in the Honolulu Jail, commencing on Friday at 6:00 p.m. to Monday at 6:00 a.m., for a period of THREE MONTHS * * *."

At approximately 12:40 a.m. on July 23, 1964, defendant and George Enoka were riding in a Chevrolet two-door sedan which was being operated by defendant's cousin, a juvenile, in the Waikiki area of Honolulu. At the time, the automobile was being driven in a westerly (Ewa) direction on Kalakaua Avenue and was brought to a halt by the stoplight at the intersection of Kalakaua and Seaside Avenues. Here, Perillo, an enlisted Navy

man, was offered and accepted a ride back to his post at Pearl Harbor. Enoka was seated on the right front seat next to the driver while Perillo was seated on the left rear seat next to defendant, who was on the right side directly behind Enoka. The vehicle continued to be driven in a westerly (Ewa and towards Pearl Harbor) direction along Kalakaua Avenue until the intersection with Ala Moana Boulevard. There it was turned left and continued along Ala Moana Boulevard to the eastern (Diamond Head) entrance of Ala Moana Park. The sedan was then driven into the park. Prior to entering the park, Perillo produced what he described as "a diving knife" and exhibited it to Enoka and defendant.

What thereafter occurred is the subject of conflicting testimony as follows.

Perillo testified that he took the knife out of his bag for the sole purpose of showing it to the occupants of the automobile as a prized possession.[1] He handed the knife to Enoka who examined it. At about this time Enoka turned and struck Perillo asking him for his billfold and all his money. Perillo handed a five dollar bill to Enoka. He was "scared spitless." He pleaded with defendant to "try to talk his friend out of doing what he was going to do," but was told by defendant that "he couldn't do anything, the guy that was sitting in the front seat on the passenger side was the boss." Thereafter, he was driven to a school where he was pulled out of the car and struck by Enoka before being released.

Defendant testified that Perillo pulled the knife out of the bag he was carrying and as he wiped the blade said it was for "protection." Enoka then grabbed the knife and punched Perillo as he took it away from him. Whereupon Perillo panicked and took a five dollar bill out of his pocket

---

[1] "I was kind of proud of it. I had just bought it about a week before and I was fairly proud of the knife and something like that makes me feel proud, it is a good knife, I just wanted to show it off."

and threw it at Enoka in the front seat without being asked for it. Defendant insisted that the purpose of their being in the Waikiki area was to look for girls and that they were going to pick up a girl named Alice in Ala Moana Park.

Detective Chu of the Honolulu Police Department testified that subsequent to defendant's arrest and while still in police custody, defendant told him that as they were driving towards Waikiki earlier, he, Enoka and the juvenile driver "all agreed to look for trouble with haoles."[2]

Of the four points that counsel for defendant indicated he would rely upon in this appeal in *forma pauperis,* two were abandoned in the opening brief and the remaining two were consolidated in the sole specification of error presented in this appeal, namely "that the verdict[3] was contrary to law and the weight of evidence."

One of the points that defendant's counsel intended to rely upon in this appeal and later abandoned in the opening brief was that "the Court erred in allowing in the evidence the oral statements made by defendant Robert Kaimi Cummings after an illegal arrest." This referred to the oral statement testified to by Detective Chu, namely, that while in police custody the defendant told him that prior to the alleged robbery he, Enoka and the juvenile driver "all agreed to look for trouble with haoles." In this connection Detective Chu further testified that defendant was informed before he made this statement "that whatever he [the defendant] tells me could be used for him or against him at the trial at a later date" and that defendant made no requests prior to making this statement.

---

[2] "Haole" is a Hawaiian term used to designate a white person or Caucasian, formerly applicable to any foreigner or stranger. In modern times, through usage, it has degenerated to also include and constitute a contemptuous reference to white persons or Caucasians.

[3] The reference to the verdict was actually intended and will be taken to be to the decision and finding of the trial judge that defendant was guilty as charged.

The only objection made to the admissibility of this statement in evidence was the illegality or irregularity of defendant's arrest. The sole basis was that it followed an illegal or irregular arrest and that it was made while defendant was being illegally detained. That counsel abandoned this point on appeal is understandable in view of the basis of the objection made. Counsel for defendant did not further question the admissibility of this statement in his briefs and at the argument on this appeal.

After the conclusion of the argument this court posed the question as to whether or not it could, nonetheless, consider *sua sponte* the question of the admissibility of this oral statement in evidence under the principles established by *Escobedo* v. *Illinois,* 378 U.S. 478, 490, 491, the essence of the holding being stated by the court (at pp. 490-491) as follows:

> "* * * that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' *Gideon* v. *Wainwright,* 372 U.S., at 342, and that no statement elicited by the police during the interrogation may be used against him at a criminal trial."

The true nature of appellate review has long been recognized in Hawaii. It is well established by statute,[4]

---

[4] R.L.H. 1955, § 214-4; R.L.H. 1955, § 212-14, as amended.

rule[5] and decision in criminal as well as civil proceedings that questions not properly raised so as to have been considered and ruled upon by the trial judge will not be considered and passed upon for the first time on appeal. *Territory* v. *Santana,* 37 Haw. 586; *Territory* v. *Gagarin,* 36 Haw. 1; *Territory* v. *Chong,* 36 Haw. 537; *Territory* v. *Tsutsui,* 39 Haw. 287; *State* v. *Shon,* 47 Haw. 158, 385 P.2d 830; *State* v. *Pokini,* 45 Haw. 295, 367 P.2d 499; *State* v. *Arena,* 46 Haw. 315, 379 P.2d 594.

Recently the Supreme Court of the United States has ruled on the question of whether a state, under certain particular circumstances, violated the accused's constitutional rights in refusing to review a "federal claim" on appeal on the ground that the application of the state's procedural rule precluded review on appeal of questions not raised below. *O'Connor* v. *Ohio,* 87 S.Ct. 252 (November 14, 1966). And see, *Westover* v. *United States,* 384 U.S. 436, 494, note 69 (No. 761, decided June 13, 1966 in connection with *Miranda* v. *Arizona,* 384 U.S. 436). However, *O'Connor* is distinguishable in that the conduct there complained of (which was not objected to in the trial court nor specified as error on appeal to the Ohio Supreme Court) was proscribed as unconstitutional in *Griffin* v. *California,* 380 U.S. 609, after the trial of the defendant, and the Supreme Court of the United States reasoned that "defendants can no more be charged with anticipating the *Griffin* decision than can the States. * * * Thus, [petitioner's] failure to object to a practice which Ohio had long allowed cannot strip him of his right to attack the practice following its invalidation by this Court." Likewise in *Westover* the Court stated: "The failure of defense counsel to object to the introduction of the confession at trial, noted by the Court of Appeals and emphasized by the Solicitor General, does not preclude our consideration of

---

[5] H.R.Cr.P., Rule 51; Rules of the Supreme Court of Hawaii, Rule 3(b)(3), (4).

the issue. Since the trial was held prior to our decision in *Escobedo* and, of course, prior to our decision today making the objection available, the failure to object at trial does not constitute a waiver of the claim."

In the present case not only was the question of the admissibility of defendant's damaging statement not properly presented for the trial judge's ruling, nor specified as error in this appeal, but the improper objection (based on illegal arrest) to its admissibility in the trial court was made with the presumed knowledge[6] of the principles established in *Escobedo, supra,* and the abandonment of the question on appeal was likewise done after the safeguards required by *Escobedo, supra,* were well established. Under these circumstances the alleged error could well be treated as a matter not raised.

There is, of course, the exception that an appellate court "may consider questions raised for the first time on appeal if necessary to serve the ends of substantial justice or prevent the denial of fundamental rights." 5 Am. Jur. 2d, *Appeal and Error,* § 549 (1962); *Silber* v. *United States,* 370 U.S. 717. The power to *sua sponte* notice "plain errors or defects affecting substantial rights" not properly brought to the attention of the trial judge nor raised on appeal resides in this court. H.R.Cr.P., Rule 52(b); 4 Barron and Holtzoff, *Federal Practice and Procedure,* § 2587 (Rules ed.); *State* v. *Ruiz,* 49 Haw. 504, 421 P.2d 305 (No. 4523, decided December 13, 1966).

Erroneous admission of evidence may constitute "plain error" if "a fair trial of the accused was thereby impaired," or if it "substantially prejudice[d] the accused." 4 Barron & Holtzoff, *Federal Practice and Procedure, supra,* § 2587 (Rules ed.); *Harling* v. *United States,* 295 F.2d 161 (D.C.

---

6 *Escobedo* v. *Illinois, supra,* 378 U.S. 478, was decided on June 22, 1964, while the trial of this defendant was had in October 1964, four months later.

Cir. 1961) ; *Taylor* v. *United States*, 222 F.2d 398 (D.C. Cir. 1955) ; *United States* v. *Dunn*, 299 F.2d 548 (6th Cir. 1962) ; *United States* v. *Long*, 323 F.2d 468 (6th Cir. 1963). Here, defendant denied making his purported statement to Detective Chu that he, Enoka and the juvenile driver of the car "all agreed to look for trouble with haoles," and testified rather that they went to Waikiki to "look for girls." The trial judge believed Detective Chu, while disbelieving defendant, and found the statement to be evidence of preconcert decisive to the issue of defendant's guilt.[7] In doing so he rendered the admissibility of this statement peculiarly vulnerable as possible error "affecting substantial rights" under H.R.Cr.P., Rule 52(b). *Cf.*, *State* v. *Ruiz, supra,* 49 Haw. 504, 421 P.2d 305 (No. 4523, decided December 13, 1966).

Defendant was brought to the police station at about 1:30 a.m., following his arrest on July 23, 1964. He was interviewed by Detective Chu about 4:19 a.m. Prior to making the damaging statement defendant was warned that whatever he said "could be used for him or against him at the trial at a later date." Defendant was not informed, however, of his constitutional right to remain silent. No requests of any kind were made by defendant, let alone for assistance by counsel. There was no evidence of any unusual coercive tactics used during the interrogation.

Under these circumstances, even had the arrest been illegal, the statement was not rendered inadmissible and the objection made at the trial was clearly inapplicable.

---

[7] The trial judge in ruling upon the motion to reconsider stated: "If in this particular case there was nothing said among the defendants and the defendant was picked up and this actually happened or happened subsequent thereto, there would be no question in my mind but that the defendant would be not guilty, but here from the very beginning they were together and they went out to give trouble to haoles, whatever it might be, and he is there with them."

*State* v. *Kitashiro,* 48 Haw. 204, 210, 397 P.2d 558. There were absent the "oppressive circumstances" necessary for the application of *Wong Sun* v. *United States,* 371 U.S. 471.

While here, defendant had not been warned "of his absolute constitutional right to remain silent," he had not "been *denied* an opportunity to consult with his lawyer"[8] after requesting that opportunity as also required in order for *Escobedo* v. *Illinois, supra,* 378 U.S. 478, 491, to be applicable.

Both the state and federal courts have differently applied *Escobedo,* being in disagreement as to its implications and requirements. See footnote 12, *Johnson* v. *New Jersey,* 384 U.S. 719, 734. Some jurisdictions have required a showing of the additional requirement that the suspect be advised of his right to counsel as well as his right to remain silent. *People* v. *Dorado,* 62 Cal. 2d 338, 42 Cal. Rptr. 169, 398 P.2d 361, *cert. denied,* 381 U.S. 937, 381 U.S. 946; *State* v. *Neely,* 239 Or. 487, 395 P.2d 557; *Commonwealth* v. *Negri,* 419 Pa. 117, 213 A.2d 670; *State* v. *Dufour,* 206 A.2d 82 (R.I. 1965); *United States ex. rel. Russo* v. *New Jersey,* 351 F.2d 429 (3rd Cir. 1965), *vacated and remanded,* 384 U.S. 889. Most jurisdictions, however, have limited *Escobedo* to its facts making it mandatory for the suspect to request assistance of counsel, if the statement is to be excluded. *Duncan* v. *State,* 278 Ala. 145, 176 So. 2d 840; *State* v. *Sherrick,* 98 Ariz. 46, 402 P.2d 1, *cert. denied,* 384 U.S. 1022; *State* v. *Winsett,* 205 A.2d 510 (Del. 1964); *Williams* v. *State,* 206 A.2d 501 (Del. 1964); *People* v. *Lewis,* 32 Ill.2d 391, 207 N.E.2d 65, *cert. denied,* 384 U.S. 1021; *People* v. *Hartgraves,* 31 Ill.2d 375, 202 N.E.2d 33, *cert. denied,* 380 U.S. 961; *State* v. *Fox,* 131 N.W.2d 684 (Iowa 1964); *Cowans* v. *State,* 238 Md. 433, 209 A.2d 552; *Commonwealth* v. *Tracy,* 207 N.E.2d 16 (Mass. 1965);

---

[8] Emphasis added.

*State* v. *Howard,* 383 S.W.2d 701 (Mo. 1964); *State* v. *Worley,* 178 Neb. 232, 132 N.W.2d 764; *Bean* v. *State,* 81 Nev. 25, 398 P.2d 251, *cert. denied,* 384 U.S. 1012; *State* v. *Blanchard,* 44 N.J. 195, 207 A.2d 681; *Pece* v. *Cox,* 74 N.M. 591, 396 P.2d 422; *People* v. *Gunner,* 15 N.Y.2d 226, 205 N.E.2d 852; *Miller* v. *State,* 387 S.W.2d 401 (Tex. 1965), *cert. denied,* 384 U.S. 1014; *State* v. *Darst,* 65 Wash.2d 808, 399 P.2d 618; *Browne* v. *State,* 24 Wis.2d 491, 131 N.W.2d 169, *cert. denied,* 379 U.S. 1004. We are inclined towards the narrow construction of the requirements of *Escobedo,* in the interest of proper digestion by society of the radical departures from customary police investigatory practices. In this connection we feel that the Supreme Court of the United States so intended when it summarized its holding in *Escobedo* with these closing words:

> "We *hold only* that when the process shifts from investigatory to accusatory—when its focus is on the accused and its purpose is to elicit a confession—our adversary system begins to operate, and, under the circumstances here, *the accused must be permitted to consult with his lawyer."* (378 U.S. 478, 492, emphasis added.)

Permission cannot spawn in vacuity. In the absence of any request for the assistance of counsel, defendant's statement made here to Detective Chu was properly admissible in evidence. *Johnson* v. *New Jersey, supra,* 384 U.S. 719, 734, emphatically points out that the specific holding of *Escobedo, supra,* required exclusion of a defendant's statement when the police "have not effectively warned [the suspect] of his absolute constitutional right to remain silent," *and* "the suspect has requested and been denied an opportunity to consult with his lawyer * * *." *Cf., State* v. *Kitashiro, supra,* 48 Haw. 204, 213-215, 397 P.2d 558, 563-564. In *State* v. *Owen,* 101 Ariz. 156, 416 P.2d 589, 594, the court after also considering *Escobedo* in conjunction

with *Miranda,* concluded:

"In Escobedo, the court found that two of the conditions for holding the confession to be involuntary were that (1) the defendant had requested and been denied counsel, and (2) that he had not been effectively warned of his constitutional right to remain silent. These two conditions were not present in the instant case, therefore under the test of Escobedo, supra, we find that the court did not err in its finding that the statement was voluntary."

It is true that *Miranda* v. *Arizona, supra,* 384 U.S. 436, among other safeguards, imposed the new requirement that the suspect be advised of his absolute right to counsel. This requirement, as seen, had been anticipated by the few jurisdictions like California which had broadly construed the requirements of *Escobedo* v. *Illinois, supra.* However, the United States Supreme Court has ruled that the guidelines of *Miranda, supra,* are "available only to persons whose trials had not *begun* as of June 13, 1966." *Johnson* v. *New Jersey, supra,* 384 U.S. 719, 734. (Emphasis added.) Since defendant's trial in this case had begun on October 19, 1964, the requirements of *Miranda, supra,* are here inapplicable.

There being no error in the admission into evidence of the damaging statement made by defendant to Detective Chu, we can now proceed to a consideration of the sufficiency of the evidence to support the finding of guilt under the sole specification[9] presented in this appeal.

The established principles governing appellate review to ascertain the sufficiency of the evidence to sustain a conviction are succinctly and aptly stated in *State* v. *Tamanaha,* 46 Haw. 245, 251-252, 377 P.2d 688:

"* * * evidence must be considered in its strongest

---

[9] As has been noted, the specification of error relied upon and urged is: "That the verdict was contrary to law and the weight of evidence."

light for the State by an appellate court in passing on the legal sufficiency of such evidence to support a conviction. *State* v. *Carvelo,* 45 Haw. 16, 31, 361 P.2d 45. Also, *State* v. *Yoshino,* 45 Haw. 640, 372 P.2d 208; *Glasser* v. *United States,* 315 U.S. 60, 80, citing *United States* v. *Manton,* 107 F.2d 834, 839 (2d Cir.). It matters not if a conviction under the evidence as so considered might be deemed to be against the weight of the evidence so long as there is substantial evidence tending to support the requisite findings for conviction. *State* v. *Foster,* 44 Haw. 403, 409, 354 P.2d 960; *State* v. *Carvelo, supra,* at page 33. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there is substantial evidence to support the conclusion of the trier of fact. Further, the rule is the same whether the accused has been tried before a judge or a jury. *Territory* v. *Kinoshita,* 38 Haw. 335; 22 C.J.S., *Criminal Law,* § 401(5), p. 1046; Wharton's *Criminal Law and Procedure* (Anderson 1957), Vol. V, § 2254, p. 512; *Edmondson* v. *State,* 30 Ala. App. 433, 7 So. 2d 508; *Commonwealth* v. *Johnson,* 123 Ky. 437, 96 S.W. 801; *Campbell* v. *State,* 221 Md. 80, 156 A.2d 217. Nor has the adoption of the Hawaii Rules of Criminal Procedure, modeled after the Federal Rules of Criminal Procedure, altered this rule."

*Accord, State* v. *Arena, supra,* 46 Haw. 315, 379 P.2d 594.

Defendant attacks the findings of the trial judge by attempting to reconcile the conflicting evidence in his favor while disregarding the unfavorable portions thereof. *Territory* v. *Ebarra,* 39 Haw. 488, 492, points out that to test the sufficiency of the evidence an appellate court "will not attempt to reconcile conflicting evidence" for as *State* v. *Carvelo,* 45 Haw. 16, 33, 361 P.2d 45, so well asserts:

"* * * it is established law in this jurisdiction that a * * * verdict in any case involving conflicting evidence

and depending on the determination of credibility of witnesses or the weight of the evidence is invulnerable when attacked on appeal if there is any substantial evidence amounting to more than a mere scintilla tending to support the findings necessary to the verdict rendered."

Defendant was found guilty as a principal to the crime of robbery in the second degree under R.L.H. 1955, § 252-1, which provides:

"*Principal.* All who take part in the commission of any offense, or, being present, aid, incite, countenance or encourage others in the commission thereof, shall be deemed principals therein."

The prosecution concedes that mere presence at the scene of an offense, in the absence of other circumstances, does not make one a principal to the offense. 21 Am. Jur. 2d, *Criminal Law,* § 121 (1965). However, presence at the scene of an offense may be considered in connection with other circumstances in determining whether or not a person is a principal therein. *People* v. *Cole,* 30 Ill.2d 375, 196 N.E.2d 691; *People* v. *Cione,* 293 Ill. 321, 12 A.L.R. 267, 127 N.E. 646; *People* v. *Marx,* 291 Ill. 40, 125 N.E. 719; *Cox* v. *State,* 201 N.E.2d 693 (Ind. 1964) ; *People* v. *Stadnick,* 207 Cal. App. 2d 767, 25 Cal. Rptr. 30; *People* v. *Washington,* 26 Ill.2d 207, 186 N.E.2d 259; *Malcolm* v. *State,* 232 Md. 222, 192 A.2d 281; *Mobley* v. *State,* 227 Ind. 335, 85 N.E.2d 489; Annot., 12 A.L.R. 275 (1921). As stated in *Territory* v. *Ebarra, supra,* 39 Haw. 488, 491:

"* * * the defendant could not be convicted of the offense charged unless he actually or constructively committed it. If his liability arise from the act of another, it must appear that the act done was in furtherance of a common purpose. The common purpose of robbery is shown by acts of the defendant. * * *"

And as *State* v. *Shon, supra,* 47 Haw. 158, 176, 385 P.2d

830, goes on to point out:

> "\* \* \* a person who engages with others in the commission of an unlawful act is criminally responsible for everything done by his confederates which follows incidentally in the execution of the common design as one of its probable and natural consequences."

To like effect see *State* v. *Smith,* 221 N.C. 400, 20 S.E.2d 360, 363; *State* v. *McCahill,* 72 Iowa 111, 30 N.W. 553, 33 N.W. 599; *State* v. *Powell,* 168 N.C. 134, 83 S.E. 310.

Defendant, Enoka and the juvenile driver, prior to picking up Perillo, agreed "to look for trouble with haoles." Further, when Perillo sought assistance from defendant he was told that Enoka "was the boss." So aside from the physical presence of defendant, we have here not only a prior agreement to do mischief but also acquiescence by defendant in his acknowledgment that he was in fact working for or with Enoka who perpetrated the robbery on Perillo. It cannot be questioned that Perillo was placed in fear by Enoka's conduct in striking him while taking possession of the knife. Perillo testified that he "was scared spitless." There is no question that there was evidence of "common design" or "common purpose" between defendant and his companions within the accepted meaning of preconcert.[10] The actions of Enoka were in furtherance of this common design or purpose, and by perpetrating the offense of robbery on Perillo, Enoka was, in fact and effect, causing trouble with a "haole" in accordance with their agreed plan of action. Defendant is in no position to insist that he did not intend the "trouble" to go as far as robbery. He was present lending the weight of numbers as planned, and if he disapproved the extent to which Enoka had gone he should have disavowed any intent to back him up. He was called upon to do so when

---

[10] "To arrange beforehand, settle by prior agreement." Webster, *Third New International Dictionary* (1964).

Perillo appealed for help. That he was himself "scared" of Enoka (of which there is evidence) is no defense. He unfortunately had placed himself in a position where courage would be needed if he was to extricate himself from the venture on which he had embarked.

The conspiracy among defendant and his companions need not be alleged in the information to warrant conviction of the crime committed in furtherance of such conspiracy. *Territory* v. *Blackman,* 32 Haw. 460, 464; *State* v. *Yoshida,* 45 Haw. 50, 361 P.2d 1032; *State* v. *Yoshino,* 45 Haw. 640, 372 P.2d 208.

Even considering the evidence only as it favored defendant (as he contends we should in his briefs and at the argument), namely that defendant was present but "did nothing in furtherance of the acts of Enoka," it would not necessarily absolve defendant from guilt. *People* v. *Kolep,* 29 Ill.2d 116, 193 N.E.2d 753, 755. In *State* v. *O'Keefe,* 23 Nev. 127, 43 Pac. 918, relied principally upon by this court in *Territory* v. *Ebarra, supra,* 39 Haw. 488, the court there stated that "upon the evidence * * * the jury could have found the defendant guilty of the robbery" even though "it was not definitely shown that defendant participated in the robbery, other than he came with the robbers, and left when they left, was present at the robbery, and apparently acquiesced therein." To the same effect is *People* v. *Carlson,* 177 Cal. App. 2d 201, 2 Cal Rptr. 117.

In view of the foregoing, we can only conclude that there was more than enough substantial evidence adduced at the trial of this case to support the finding of guilt.

The judgment is affirmed.

*Patrick F. Tuohy* for defendant-appellant.

*John H. Peters,* Prosecuting Attorney, and *Edwin Y. Sasaki,* Deputy Prosecuting Attorney, for the State, plaintiff-appellee.