STATE OF HAWAII *v.* JAMES KEAWEHALU WONG.

No. 4461.

JULY 15, 1967.

RICHARDSON, C.J., MIZUHA, MARUMOTO, ABE AND LEVINSON, JJ.

OPINION OF THE COURT BY LEVINSON, J.

The question that we are required to answer in this appeal is whether in the totality of circumstances in which a confession was obtained it was voluntary and could be constitutionally used as evidence by the prosecution in a trial that began September 8, 1964. We hold that it was not.

Defendant-Appellant, James Keawehalu Wong, hereafter referred to as "defendant," was an inmate at the Hawaii State Prison (formerly known as Oahu Prison) where he was missing on and after July 1, 1956, until he was retaken on July 14, 1956.

On July 7, 1956, while the defendant was missing from the prison, George W. Taylor, a taxi driver, was killed in Honolulu. Taylor had been struck at least nine blows on the head with a blunt instrument. His skull could be seen under the resulting

cuts. His lips and the inside of his mouth were cut. His ears were cut or torn. He suffered a deep wound of the right side of his neck 5½ or 6 inches in length caused by some edged or sharp instrument which severed the jugular veins. Taylor bled to death because of the cutting through of the jugular veins and the tearing of a large vein in the skull.

In November 1956, the defendant was indicted in connection with his escape from prison, and an attorney was appointed by the court to represent him in that matter. On February 20, 1958, in those proceedings there was entered a judgment of insanity and order of commitment to the Territorial Hospital. That was followed, on the same day, by an order of nolle prosequi based upon a motion of the prosecution referring to the judgment of insanity and order of commitment.

The defendant was indicted on July 25, 1957, for the first degree murder of Taylor. On February 20, 1958, upon motion of the prosecution, the court entered an order of nolle prosequi on that charge because of the mental illness of the defendant at that time, as shown in the escape case to which the motion referred.

On May 17, 1962, the defendant, following his discharge on February 27, 1962, from the rolls of the State Hospital, formerly known as the Territorial Hospital, was re-indicted for the first degree murder of Taylor. A motion to dismiss this second indictment was filed June 15, 1962. An order granting the motion and dismissing the indictment was entered September 17, 1962. The State appealed. The opinion of this court reversing and remanding for further proceedings was filed February 17, 1964, and is set out in 47 Haw. 361, 389 P.2d 439. That opinion quotes at length from the psychiatric commissions' reports of April 23, 1957, and January 14, 1958, included in the judgment of insanity entered February 20, 1958, in the escape case. In the interest of justice we take judicial notice of our own records in this interrelated proceeding where the parties are the same. *State* v. *Patton*, 260 N.C. 359, 132 S.E.2d 891, *cert. denied*, 376 U.S. 956, 84 S. Ct. 977, 11 L. Ed. 2d 974.

The defendant offered in evidence in the trial of this case

which began September 8, 1964, as above noted, a certified copy of the judgment of insanity entered in the escape case. The purpose of the offer, as stated by defendant's counsel, was to show the judgment entered on February 20, 1958, "and the findings upon which the court made that judgment with reference to the mental condition of the defendant James K. Wong between April 23, 1957 and January 14, 1958." The offer was refused, and the defendant specifies that refusal as error. The judgment of insanity is included in the designation of contents of the record on appeal in this case and is before us.

In refusing to admit the document, the trial court said that the judgment merely adjudicated the mental condition of the defendant on February 20, 1958, and not at any earlier time. At the time of the trial and at the present time, more than seven and ten years, respectively, after the confession was made, we think that it would impose an undue burden on the defendant if we were to require him to establish his mental condition at the time of the confession without the aid of the findings of the psychiatric commissions appointed by the court.

The judgment of insanity, entered February 20, 1958, in the escape case, refers to the appointment on December 12, 1956, of three physicians as a psychiatric commission for the purpose of examining the defendant and making various determinations. It also refers to findings of the psychiatric commission that on July 7, 1956, the defendant "was not acting under mental derangement rendering him incompetent to discern the nature and criminality of his acts," but that on April 23, 1957, the "defendant was suffering from a major mental illness, or, in other words, from a psychotic reaction." The judgment of insanity also refers to a further examination of the defendant by a psychiatric commission and its finding that on January 14, 1958, the defendant was "still suffering from a major mental illness, or, in other words, from a psychotic reaction, as was reported to the Honorable W. Z. Fairbanks on April 23, 1957."

On May 15, 1957, only 22 days after the psychiatric commission had found that the defendant was "suffering from a major mental illness, or, in other words, from a psychotic reaction," and

eight months before the psychiatric commission reported that the defendant was "still suffering" from it, the defendant, while in custody, was interrogated by Police Investigator John Jardine in the office of Arthur Hoke, the executive secretary of the Board of Paroles and Pardons, at Oahu Prison, concerning his part in the murder of Taylor. The only testimony given at the trial concerning the mental condition of the defendant at the time of the confession was by Police Investigator John Jardine who said that the defendant "was not confused, his statements were clear, he presented himself as a sane and normal person." The other persons present at the interrogation were three police officers, another police investigator and a police shorthand reporter. The questions and answers were transcribed and, five days later, signed by the defendant and witnessed by four of the persons who had been present during the interrogation.

The interrogation established the identity of the defendant and that his last admission to the prison was for murder and escape. Then he was questioned about the escape, his activities thereafter, and the details of the murder. In the statement the defendant admitted that while he was in Taylor's taxi he had struck Taylor on the head a number of times until Taylor was unconscious, that he dragged Taylor out of the taxi, took his wallet and watch, and that he cut Taylor's throat with a big knife.

There is no evidence that at the time of the interrogation the defendant was advised (1) that he had a constitutional right to remain silent, or (2) that anything he might say could be used against him at the time of the trial, or (3) that he had a right to have an attorney, or (4) that if he could not afford to hire an attorney the court would appoint one for him. There is no evidence that the attorney appointed by the court to represent the defendant in the escape matter was advised that his client would be interrogated concerning the escape or murder. There is no evidence that the defendant ever asked to have an attorney present at the time of the interrogation.

At the trial, which began September 8, 1964, and which resulted in a conviction for first degree murder, the confession

made orally on May 15, 1957, and signed May 20, 1957, was admitted in evidence over the following objection of the defendant's attorney: "Your Honor, the basic grounds are the mental condition of the defendant existing as of that time of the taking of this statement which prevented any statement being taken from him that would have any legal significance, and; secondly, the fact that he was denied the right of counsel at that time, that he was not warned or advised of his constitutional rights." The trial judge in ruling on the objection discussed in detail the court file in the escape case, including the judgment of insanity and order of commitment. The defendant testified at the trial that he had nothing to do with Taylor's death and that the statements contained in the confession were not correct. When asked why he signed the statement he answered that he was confined in prison in a segregated area, that he felt everybody was against him, and that another convict in the prison had told him that if he didn't confess something would happen to his family.

We are not called upon in this appeal to decide the guilt or innocence of the defendant of the brutal murder that was committed. Nor are we called upon to determine whether the confession obtained is true or false. The sole issue to be decided at this time is whether the confession was freely and voluntarily given.

It is important to remember that although the killing of Taylor occurred in July 1956, and the interrogation of Wong occurred in May 1957, the trial began September 8, 1964, two months after the Supreme Court of the United States decided *Escobedo* v. *Illinois*, 378 U.S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977, which has been held to be applicable to all cases in which the trial began after June 22, 1964, the date of that decision. *Johnson* v. *New Jersey*, 384 U.S. 719, 86 S. Ct. 1772, 16 L. Ed. 2nd 882.

The United States Supreme Court did not decide *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, until June 13, 1966, and it has been held to apply only to cases in which the trial began after that date. *Johnson* v. *New Jersey*, *supra*. Some forward looking state courts anticipated *Miranda*, the most notable example being *People* v. *Dorado*, 62 Cal. 2d

338, 398 P.2d 361, *cert. denied,* 381 U.S. 937, but this court followed a more conservative course, as did most jurisdictions, in limiting *Escobedo* to its facts, making it mandatory for the suspect to request and be denied assistance of counsel, if the statement is to be excluded. *State* v. *Cummings,* 49 Haw. 522, 530, 423 P.2d 438, 443. The reason given by this court was that it was "in the interest of proper digestion by society of the radical departures from customary police investigatory practices." *Id.* at 531, 423 P.2d at 444. The basic question remaining to be determined in this case, even under the narrow construction of the requirements of *Escobedo* adopted in *Cummings,* is whether the defendant's confession was given freely and voluntarily without any compelling influences. As pointed out in *Johnson* v. *New Jersey, supra,* and stated in *Davis* v. *North Carolina,* 384 U.S. 737, 740, 86 S. Ct. 1761, 1764, 16 L. Ed. 2d 895, 897:

> "* * * the nonretroactivity of the decision in *Miranda* does not affect the duty of courts to consider claims that a statement was taken under circumstances which violate the standards of voluntariness which had begun to evolve long prior to our decisions in *Miranda* and *Escobedo* v. *Illinois,* 378 U.S. 478 (1964). This Court has undertaken to review the voluntariness of statements obtained by police in state cases since *Brown* v. *Mississippi,* 297 U.S. 278 (1936). The standard of voluntariness which has evolved in state cases under the Due Process Clause of the Fourteenth Amendment is the same general standard which applied in federal prosecutions— a standard grounded in the policies of the privilege against self-incrimination. *Malloy* v. *Hogan,* 378 U.S. 1, 6-8 (1964)."

Citing *Johnson* v. *Zerbst,* the Supreme Court of the United States reminds us in *Miranda,* 384 U.S. at 475, "This Court has always set high standards of proof for the waiver of constitutional rights * * *."

In the totality of circumstances in which the defendant's confession was obtained during an interrogation while the defendant was in custody, including the mental condition of the defendant as shown by the findings of the psychiatric commissions set out

in the judgment of insanity in the escape case, the failure of the interrogator to advise the defendant of his constitutional rights, and the absence of any attorney representing the defendant, even the attorney appointed to represent him in the escape case, we hold that the confession was not voluntary and therefore that it cannot be constitutionally used by the prosecution as evidence against him at his trial.

Reversed and remanded for a new trial.

*Myer C. Symonds* for defendant-appellant.

*T. Irving Chang,* Deputy Prosecuting Attorney, City & County of Honolulu (*John H. Peters,* Prosecuting Attorney, with him on the brief) for plaintiff-appellee.