## STATE OF NORTH CAROLINA v. JESSE GARFIELD PATTON

(Filed 30 October 1963.)

**1. Constitutional Law § 30; Criminal Law § 86—**

A person who is formally charged with the commission of a crime is entitled to a speedy and impartial trial under both the Federal and State Constitutions, but the right to a speedy trial is necessarily relative, and may be used only as a shield to protect a defendant against arbitrary and oppressive delays due to the fault of the prosecuting authorities.

**2. Same—**

A delay of more than four years between the time the alleged offense was committed and the retrial of defendant does not violate defendant's constitutional right to a speedy trial, notwithstanding two of defendant's witnesses may not be available at the retrial, when it appears of record that there was no contention of undue delay in respect to the original trial and that retrial was had shortly after and in accordance with the order of the Federal Court setting aside the former conviction on the

ground that defendant was not represented by counsel, since the delay was not due to the prosecuting authorities but to the act of defendant in procuring a retrial.

**3. Appeal and Error § 35;   Criminal Law § 151—**

The Supreme Court will take judicial notice of its own records in an interrelated proceeding where the parties are the same, and therefore will take notice of an affidavit filed in proceedings for *certiorari* relating to the same prosecution.

**4. Constitutional Law § 30;   Criminal Law § 86—**

When it appears from the record that defendant's witness would testify that he drove defendant to a city in another state some time before the alleged offense was committed in this State, that the witness knew defendant had no automobile and "believed" it would have been almost impossible for defendant to have been in this State at the time the offense was committed, the fact that such witness was incapacitated at the time of trial is not ground for continuance, since such testimony would have no probative force in support of defendant's defense of alibi. Constitution of North Carolina, Article I, § 17.

APPEAL by defendant from *Campbell, J.,* May Criminal Session 1963 of CALDWELL.

Criminal prosecution on an indictment, found at the February Term 1960, charging the defendant on 20 October 1958 with robbing J. E. Chandler of $12 in money by the use of firearms and other dangerous weapons, a violation of G.S. 14-87. (Since the citizens of North Carolina in the General Election of 6 November 1962, by a majority of the votes cast, amended Article IV of the State Constitution, terms of the superior court are now designated in this article of the Constitution as sessions of court.)

Plea: Not guilty. Verdict: Guilty as charged.

From a judgment of imprisonment, defendant appeals.

*Attorney General T. W. Bruton and Assistant Attorney General James F. Bullock for the State*
*Claude F. Seila for defendant appellant.*

PARKER, J.   Defendant assigns as error the denial by the court of his written motion, made before pleading to the indictment, to dismiss the indictment against him and to discharge him from custody on the ground that to try him now on an indictment found against him at the February Term 1960 would be a denial of his constitutional rights to a speedy and impartial trial, and of his rights to due process of law under the Fourteenth Amendment to the Federal Constitution. In his written motion, he states that the offense charged in the indict-

ment is alleged to have occurred on 20 October 1958, that at the time of the alleged commission of the offense he was rooming and boarding at the house of Mrs. Florence Rutledge in Roanoke, Virginia, who could testify, if alive, that at the time of the commission of the alleged offense he was in Roanoke, Virginia, but that she is now dead; and further that one Kermit Vanhoy, who carried him to Roanoke, Virginia, on 12 October 1958, and was with him in Roanoke, Virginia, on 17 and 23 October 1958, and knows that he had no automobile, recently sustained a serious brain injury in an automobile accident and is unable to testify in his behalf.

A chronicle of this case prior to the May Criminal Session 1963 is necessary for a proper consideration of this assignment of error.

On 25 October 1958 defendant was arrested in Caldwell County, North Carolina, and charged with the robbery of J. E. Chandler.

At the December Term 1958 of the superior court of Caldwell County, an indictment was properly found by the grand jury of that county charging him with larceny of $12 in money from the person of J. E. Chandler by assaulting him and putting him in bodily fear and danger of his life. Defendant was not tried at that term.

At the February Term 1960 of the superior court of Caldwell County, the indictment upon which he was tried in this case was properly found by the grand jury of that county.

It seems from defendant's following testimony, given in the instant trial, that he was lawfully imprisoned during a part or most of 1959:

Direct examination: "Yes, I have been in difficulty with the law before. Well, in . . . I think it was 1949, I was convicted of breaking and entering; and then in 1956, I believe it was, I was convicted of . . . it was whisky; in other words, a whisky car was involved in it. The Federals took it and I went and took it back. This happened in 1955 but they didn't try me until 1958 . . . receiving stolen property. I served time for these offenses. When I was tried for those offenses, I pleaded guilty."

Cross examination: "Yes, I was in Federal Prison. That was for transporting a stolen car across state lines. Yes, it was a liquor car; it had been. I just hauled some for the distillers. I served a term in the Federal Prison and State's Prison."

Defendant was first tried on the indictment here charging armed robbery at the February-March Term 1960. He pleaded not guilty. He was not represented by counsel, having dismissed his employed counsel on the day of trial. He was convicted and sentenced to imprisonment. He did not appeal.

On 6 March 1962 Froneberger, Judge Presiding, appointed Claude F. Seila, a member of the bar of Caldwell County, to represent defendant, an indigent person, in a post-conviction hearing. On 25 March 1963 the United States Court of Appeals, Fourth Circuit, by a decision rendered by two judges, with one judge dissenting, held that defendant, who dismissed his employed counsel on day of trial after having been told that his trial would commence that day, with or without counsel, did not waive his constitutional right to assistance of counsel to defend charge of armed robbery. The majority opinion closed with this language: "The District Court should afford the State of North Carolina a reasonable opportunity to retry the prisoner. In default of this, the District Court should order his release. To that end, the case will be remanded for further proceedings consistent with the views herein expressed." *Patton v. State of North Carolina*, 315 F. 2d 643. In this majority opinion appear these words, which seem to support what we have said above that it appears from Patton's testimony here that he was undergoing lawful imprisonment during a part or most of 1959: "At the February 1960 term, the grand jury returned an indictment against Patton for armed robbery and the case was called for trial on that indictment on March 8, 1960. Patton was at that time in state custody and was serving a sentence for another offense."

When the opinion of the United States Court of Appeals, Fourth Circuit, was certified to the United States District Court for the Middle District of North Carolina, Preyer, United States District Judge, Middle District of North Carolina, entered on 29 April 1963 an order as follows:

"It is, THEREFORE, ORDERED, in accordance with said opinion, that the State of North Carolina is afforded the opportunity to retry the petitioner at the criminal term of the Superior Court of Caldwell County, North Carolina, to be held at Lenoir, North Carolina, commencing on the 20th day of May, 1963;

"It is further ordered that if the State of North Carolina does not retry the petitioner at said term of court, the petitioner is to be forthwith released and absolutely discharged."

Defendant at the May Criminal Session 1963 was tried on the indictment found at the February 1960 Term. He was represented by his assigned counsel, Claude F. Seila.

The State's evidence shows these facts: On 20 October 1958 J. E. Chandler, a man 76 years old, was operating a little store about 50 or 100 feet from his home. About 7:00 p.m. on the same date, his store

was closed and while he was in his home eating supper with his wife, who was about the same age, defendant Patton came into the house and said he wanted to get a package of cigarettes. After Chandler finished eating supper, he got his flashlight and went out to his store to unlock the door. When he was unlocking the store, Patton came up behind him, threw his hands over his mouth, lifted him off the ground, and said, "Tie him up." Another man tied one of his hands and tried to tie the other. Chandler had the padlock in his hand and hit him in the face with it. Then he tied his hands. They took from his person $15 in money. Chandler was making all the noise he could. When these two men saw the flashlight, which was being carried by Chandler's daughter and son-in-law as they approached, they hit him on the head with some kind of heavy metal, ran, jumped in a car, and left. It required 14 stitches to sew up the wound on Chandler's head caused by the blow. Chandler could not identify the other man. On the morning of that day Chandler was carrying a load of cattle to Wilkesboro, and saw defendant Patton standing on the highway at the foot of Blowing Rock Mountain.

Defendant offered no witnesses. He testified in substance as follows: He is 38 years old. On 20 October 1958 he was in Roanoke, Virginia, seeking employment and was not in Caldwell County. He went to Roanoke, Virginia, in Kermit Vanhoy's car. He had been there for several weeks. He stayed in Roanoke, Virginia, in a rooming house on Day Street, he believes, until 30 October 1958. The keeper of the boarding house, whose name he does not recall, died two or three years ago. Last October Kermit Vanhoy had an automobile accident, has a blood clot on his brain, and is not quite normal at the present time. On 20 October 1958 he was not at the Chandler home and did not see them. He did not strike him and did not rob him.

Defendant is claiming no undue delay in respect to his trial at the February-March Term 1960. On the contrary, what he is concerned with is the delay between the time of the commission of the alleged crime on 20 October 1958 and the beginning of the retrial at the May Criminal Session 1963, when one of his witnesses, Mrs. Florence Rutledge, had been dead two or three years, and another witness, Kermit Vanhoy, had had an automobile accident in October 1962, has a blood clot on the brain, and is not quite normal at the present time. By reason of these facts, he contends he is unable to offer the testimony of these two witnesses and no retrial should have taken place, and he should have been discharged.

The right of a person formally accused of crime to a speedy and impartial trial has been guaranteed to Englishmen since Magna Carta,

and the principle is embodied in the Sixth Amendment to the Federal Constitution, and in some form is contained in our State Constitution and in that of most, if not all, of our sister states, or, if not, in statutory provisions. *S. v. Webb,* 155 N.C. 426, 70 S.E. 1064; 22A C.J.S., Criminal Law, sec. 467(2).

G.S. 15-10, entitled "Speedy trial or discharge on commitment for felony," requires simply that under certain circumstances "the prisoner be discharged from custody and not that he go quit of further prosecution." *S. v. Webb, supra.*

The Court said in *Beavers v. Haubert,* 198 U.S. 77, 49 L. Ed. 950, 954: "The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice."

The constitutional right to a speedy trial is designed to prohibit arbitrary and oppressive delays which might be caused by the fault of the prosecution. *Pollard v. United States,* 352 U.S. 354, 1 L. Ed. 2d 393; *State v. Hadley,* Mo., 249 S.W. 2d 857. The right to a speedy trial on the merits is not designed as a sword for defendant's escape, but as a shield for his protection.

But here there has been no arbitrary and oppressive delay or reluctance on the part of the State to prosecute. On the contrary, the delay in the time of the retrial is wholly due to the belated discovery by the United States Court of Appeals, Fourth Circuit, on defendant's appeal, of a fatal error in the first trial at the February-March Term 1960, which entitled defendant to relief from the sentence and judgment which had been pronounced upon him on his first trial, but only to the point of remanding the case back so as to afford the State of North Carolina a reasonable opportunity to retry the defendant, or, in default of this, to order his release. The Federal Court of Appeals rendered its decision on 25 March 1963. When this opinion was certified to the United States District Court for the Middle District of North Carolina, that Court on 29 April 1963 entered an order, according to the mandate of the Court of Appeals, affording the State of North Carolina an opportunity to retry defendant at the criminal term commencing on 20 May 1963, or if he was not retried at that term he should be forthwith and absolutely released. The retrial was had in strict conformity with the order of the federal court. Under such circumstances there has been no denial of defendant's constitutional rights to a speedy trial, as the delay in the time of the retrial was caused by his successful efforts to reverse his conviction at the first trial. *Ex parte Alpine,* 203 Cal. 731, 265 P. 947, 58 A. L. R. 1500; *People v. Lundin,* 120 Cal. 308, 52 P. 807; *Ex parte Warris,* 28 Fla. 371,

9 So. 718; *Silvey v. State,* 84 Ga. 44, 10 S.E. 591; *Marzen v. People,* 190 Ill. 81, 60 N.E. 102; *Ferguson v. Bechly,* 224 Iowa 1049, 277 N.W. 755; *State v. Dehler,* 257 Minn. 549, 102 N.W. 2d 696, 89 A. L. R. 2d 496; *State v. Bulling,* 105 Mo. 204, 15 S.W. 367, 16 S.W. 830; *State v. Schnell,* 107 Mont. 579, 88 P. 2d 19, 121 A. L. R. 1082; *State v. Hadley, supra; Patterson v. State,* 50 N. J. L. 421, 14 A. 125; *Ex parte Meadows,* 71 Okl. Cr. 353, 112 P. 2d 419, 427; *Com. v. County Prison,* 97 Pa. 211; *Smith v. Com.,* 85 Va. 924, 9 S.E. 148; *Com. v. Adcock,* 8 Grat. (49 Va.) 661; *Vance v. Com.,* 2 Va. Cas. 162; *In re Murphy,* 7 Wash. 257, 34 P. 834; *State v. Miller,* 72 Wash. 154, 129 P. 1100; 22A C. J. S., Criminal Law, sec. 472(4); 16 C. J., Criminal Law, sec. 804(2); Wharton's Criminal Procedure, 1957, Vol. 5, p. 3. See *Fay v. Noia,* 372 U.S. 391, 9 L. Ed. 2d 837, in which case Noia and two others were convicted of murder in 1942, and the Supreme Court of the United States on 18 March 1963 rendered an opinion affirming an opinion of the Court of Appeals, Second Circuit, which held that Noia's conviction be set aside and that he be discharged from custody, unless given a new trial forthwith. See also *State v. Hadley, supra,* in which the Supreme Court of Missouri, Division No. 2, held that defendant was not denied his constitutional right to a speedy trial because of a delay of twenty years between the time when he was originally arrested and the beginning of his second trial after a judgment, under which he was confined in the penitentiary, on a previous verdict of conviction, was vacated in a habeas corpus proceeding brought by him.

When a case is retried, after a successful appeal to an appellate court, there is always the hazard that one or both of the parties may be deprived of the testimony of one or more witnesses by death or incapacity. To hold that when a defendant in a criminal action by his appeal has secured a new trial he cannot be prosecuted promptly again, because by the death of a witness who would testify in his favor, if alive, at the time of the retrial, he would in such trial by such death and loss of evidence be denied the right of due process of law under the Fourteenth Amendment to the Federal Constitution and to the rights of "the law of the land" provision of Article I, Section 17, of the State Constitution, would mean that some, if not many, cases could not be tried again. When a defendant by his appeal obtains a new trial, the law does not require that the State in order to prosecute him again must guarantee that all his witnesses shall be alive and capable of testifying for him at the retrial, for to require that would be for the law to exact of the State impossibilities. If a defendant by his appeal secures a new trial, and if at the time of the new trial the State's es-

sential witnesses are dead or incapable of testifying, the State has no other recourse than to discharge the defendant, no matter how guilty he may be. To paraphrase the language in *Beavers v. Haubert, supra,* due process of law secures rights to a defendant but it does not preclude the rights of public justice. The State has not lost the right to retry defendant by reason of the death of Mrs. Florence Rutledge, one of his witnesses. In *State v. Dehler, supra,* the Court held that an accused who, about seventeen years after his conviction and sentence for murder, is released on habeas corpus for lack of jurisdiction of the court in which he was tried, cannot properly claim the absence of a right to retry him for the reason that, due to the lapse of time, it is more difficult to prove insanity, his main defense.

Defendant's defense is an alibi; that is, that he was in Roanoke, Virginia, at the time the State's evidence shows the offense was committed in Caldwell County, North Carolina, and, therefore, he could not have committed the crime. He assigns as error the refusal of the trial court to continue the trial to a later session of court due to his inability to have Kermit Vanhoy as a witness at the trial due to his illness, and he further contends that to try him at the May Criminal Session 1963 for an offense alleged to have been committed on 20 October 1958, when Vanhoy, due to an automobile wreck in October 1962, has a blood clot on the brain and is not quite normal at present, denies him due process of law under the Fourteenth Amendment to the Federal Constitution, and his rights under "the law of the land" provision of the State Constitution, Article I, Section 17. In his brief he states: "But the retrial is of no benefit, if, because of the delay occasioned by the State in affording him a 'fair' trial, his only witnesses are unavailable, one being dead, and the other incapacitated." This statement in the brief is erroneous in stating the delay was occasioned by the State, as we have pointed out above, and further in error in asserting by inference that the State did not afford him a fair trial.

Defendant in his written motion to dismiss the indictment against him and to discharge him from custody, made at the May Criminal Session 1963, states this in respect to Kermit Vanhoy:

"As a further ground for said Motion the defendant shows unto the Court that Mr. Kermit Vanhoy, who took the defendant to Roanoke, Virginia, on the 12th day of October, 1958, and who was with the defendant on the 17th day of October, 1958, and on the 23rd day of October, 1958, in Roanoke, Virginia, and who knows of his own knowledge that the defendant did not have an automobile or any other means of transportation to and from Caldwell

County, North Carolina, where the said offense is alleged to have occurred, was recently seriously injured in an automobile accident and sustained serious brain injury in said accident, and is therefore unable to testify in behalf of the defendant; that the defendant is not responsible for the condition of Kermit Vanhoy."

On 28 March 1962 defendant, through his present counsel Claude F. Seila, filed a petition in this Court for a writ of certiorari to review an order entered by Judge Froneberger on 7 March 1962 in a post-conviction hearing involving the constitutionality of his trial, conviction, and sentence at the February-March Term 1960. Judge Froneberger in his order denied defendant any relief. In the petition for a writ of certiorari filed with us, which petition we denied, there is an affidavit by Kermit Vanhoy. We take judicial notice of our own records in this interrelated proceeding where the parties are the same. S. v. McMilliam, 243 N.C. 775, 92 S.E. 2d 205; U. S. v. Pink, 315 U.S. 203, 216, 86 L. Ed. 796, 810; Dimmick v. Tompkins, 194 U.S. 540, 48 L. Ed. 1110; Bienville Water Supply Co. v. Mobile, 186 U.S. 212, 46 L. Ed. 1132; Freshman v. Atkins, 269 U.S. 121, 124, 70 L. Ed. 193, 195; West v. L. Bromm Baking Co., 166 Va. 530, 186 S.E. 291; 31 C. J. S., Evidence, pp. 625-6. That affidavit is:

"Kermit Vanhoy, being first duly sworn, deposes and says:

"That he is a citizen and resident of Yadkin County, North Carolina.

"That on the 12th day of October, 1958, this affiant drove his automobile from North Carolina to Roanoke, Virginia, where this affiant was employed; that on said occasion Jesse Garfield Patton rode with this affiant to Roanoke, Virginia, for the purpose of trying to find a job there.

"That this affiant and Jesse Garfield Patton arrived in Roanoke, Virginia during the night of October 12, 1958, and this affiant left Roanoke, Virginia, and went to his job on the 13th day of October, 1958, leaving Jesse Garfield Patton at 218 Day Avenue, Roanoke, Virginia;

"That thereafter on the 17th day of October, 1958, this affiant returned to Roanoke and saw Jesse Garfield Patton at Roanoke, Virginia; that this affiant drove back to Jonesville, in Yadkin County, North Carolina, on Friday, October 17, 1958, leaving Jesse Garfield Patton in Roanoke, Virginia.

"That thereafter on October 23rd, 1958, on a Thursday night this affiant returned to Roanoke and the following morning, Oc-

tober 24th, 1958, Jesse Garfield Patton came to eat breakfast at the boarding house where this affiant boarded in Roanoke, Virginia;

"That thereafter this affiant and Jesse Garfield Patton came to Caldwell County, North Carolina, for the purpose of visiting a friend of Jesse Garfield Patton, and Patton was at that time on October 25, 1958, arrested and charged with 'Larceny from the Person.'

"That this affiant knows that Jesse Garfield Patton had no automobile and this affiant verily believes that it would have been almost impossible for Jesse Garfield Patton to have committed any crime in Caldwell County on the 20th day of October, 1958.

/s/ Kermit Vanhoy

Kermit Vanhoy

"Sworn to and subscribed before me this 6th day of March, 1962.

/s/ Ted G. West

Notary Public."

It is manifest from Vanhoy's affidavit, and from the extract from defendant's motion, which we have quoted above, that Kermit Vanhoy, if he had been present as a witness in the present trial and had testified, could not have testified as to where defendant was on 20 October 1958, and that his testimony would not have supported defendant's alibi. The part of the last sentence in Vanhoy's affidavit that he "knows Jesse Garfield Patton had no automobile" is of little value because of bus transportation and the vast number of automobiles in Virginia and North Carolina. The last part of the last sentence in Vanhoy's affidavit that he "verily believes that it would have been almost impossible for Jesse Garfield Patton to have committed any crime in Caldwell County on the 20th day of October 1958" is incompetent in evidence as merely the expression of opinion. Further, there is nothing in the record before us to show that Vanhoy will ever be capable of testifying as a witness.

The trial court did not err in refusing to continue the case due to the absence of Vanhoy. Further, defendant was not denied his right to due process of law under the Fourteenth Amendment to the Federal Constitution, and his right to the protection of the provisions of "the law of the land" provision of Article I, Section 17, of the State Constitution in his retrial due to the absence of Vanhoy as a witness.

We have examined the assignments of error to the charge brought forward and discussed in defendant's brief, and they are not sufficient to justify a new trial.

All defendant's assignments of error are overruled. In the trial below we find

No error.