STATE OF NORTH CAROLINA v. GEORGE EVERETT HATCHER

No. 7018SC534

(Filed 16 September 1970)

**1. Criminal Law § 21; Arrest and Bail § 9— preliminary hearing — bail — delays**

In a prosecution charging defendant with felonious assault and with armed robbery, defendant's motion to dismiss the prosecution on the ground that he was held from 31 October 1969 until 11 December 1969 without a preliminary hearing and without bail, *held* properly denied by the trial court, where it appeared from the record that (1) a major reason for the delay in holding the preliminary hearing was that the prosecuting witness spent 28 days in a hospital intensive care unit recovering from the assault, (2) the defendant and his family were financially unable to post the bail bond, (3) defendant's

State v. Hatcher

counsel was unable to get bail reduced because of the seriousness of the charge and the condition of the victim, and (4) defendant's counsel advised defendant against a hearing on the matter of bail when the solicitor told counsel that he would recommend an increase in bail.

2. **Criminal Law § 29— commitment of defendant for psychiatric evaluation**

There was no merit to defendant's contention that he was committed to a State hospital for psychiatric evaluation without his consent, where in fact the record gives rise to the inference that defendant was committed as a result of his own suggestion and on request of his counsel.

3. **Constitutional Law § 30— right to speedy trial — length of delay — absence of prejudice to defendant**

A defendant who was tried in April 1970 following his arrest on 31 October 1969 and his commitment on 11 December 1969 to a State hospital for a 77-day psychiatric examination, *held* not deprived of the right to a speedy trial, where there was no showing that the delay was due to the neglect or wilfulness of the prosecution, or that witnesses were unavailable or memories impaired by reason of any delay.

4. **Criminal Law § 66; Indictment and Warrant § 6— validity of arrest — contention of illegal photographic identification**

There is no merit to defendant's contentions that his arrest was based on an illegal photographic identification by the prosecuting witness—the photograph having carried the notation "Greensboro Police Department 1967"—and that the evidence obtained as a result of the arrest was inadmissible, where the evidence of the circumstances surrounding the arrest established that (1) the prosecuting witness had described the defendant to a police officer and had told him that a certain waitress knew the defendant's name, (2) the officer ascertained the name of defendant from the waitress, and (3) only thereafter did the officer show the photograph to the prosecuting witness.

5. **Robbery § 5— armed robbery prosecution — instruction on recent possession doctrine**

In a prosecution charging defendant with the felonious taking of an automobile during an armed robbery, the State's evidence justified an instruction on the doctrine of recent possession, where the evidence was to the effect that the prosecuting witness' automobile was parked at defendant's residence, and the prosecuting witness' automobile key was found on the person of defendant.

6. **Criminal Law § 66— police photograph of defendant — admissibility**

Where the trial court, out of the presence of the jury, directed that the words "Police Department, Greensboro" be removed from a photograph of defendant, the words appearing on a plaque around defendant's neck, the subsequent admission of the photograph into evidence was not erroneous.

**7. Criminal Law § 127— arrest of judgment**

A motion in arrest of judgment is one made after verdict and to prevent entry of judgment, and is based upon the insufficiency of the indictment or some other fatal defect appearing on the face of the record.

**8. Robbery § 6; Criminal Law §§ 26, 127— arrest of judgment — conviction of two offenses arising out of the same occurrence**

A defendant who was convicted of armed robbery and assault with a deadly weapon is entitled to an arrest of judgment on the assault conviction, where both offenses arose out of the same occurrence.

**9. Robbery § 5— armed robbery — evidence of alibi — submission of lesser included offense**

Where all of the State's evidence tended to show the commission of an armed robbery, and the defendant's alibi evidence put him at some place other than the scene of the robbery, the trial court correctly charged the jury that they could find the defendant guilty of armed robbery or not guilty, and there was no necessity to charge on defendant's guilt of common law robbery.

APPEAL by defendant from *Collier, J.,* 20 April 1970 Session, Superior Court of GUILFORD County.

Defendant was charged in one bill of indictment with feloniously assaulting one James Edward Brown with a deadly weapon with intent to kill, inflicting serious injury. In another bill of indictment, he was charged with armed robbery of James Edward Brown and the felonious taking of a 1962 Pontiac automobile valued at $500. Both charges arose out of the same occurrence. Defendant entered a plea of not guilty to each charge. The cases were consolidated for trial, and the jury returned as its verdict guilty of assault with a deadly weapon and guilty of armed robbery.

The facts necessary for a determination of the appeal are set out in the opinion.

*Attorney General Morgan by Staff Attorney Eatman, for the State.*

*Wallace C. Harrelson, Public Defender Eighteenth Judicial District, for defendant appellant.*

MORRIS, J.

[1]    Prior to entering a plea, defendant moved to dismiss both cases on the ground that he was held from 31 October 1969 until

11 December 1969 without a preliminary hearing and without bail and on the ground that defendant was committed to Cherry Hospital for psychiatric evaluation without his consent. He also moved to quash the bills of indictment. Both motions were denied. The denial of these motions forms the basis for defendant's assignments of error Nos. 1 and 2.

From the evidence taken prior to arraignment it appears that defendant was served with warrants at approximately 6 o'clock a.m. on 31 October 1969. He testified that he was then under the influence of alcohol. He further testified that he was not questioned by anyone from that time until his preliminary hearing on 11 December. After his preliminary hearing, he was sent to Cherry Hospital for 77 days. He testified that he made every effort possible to obtain a preliminary hearing. He had privately retained counsel, but stated that he did not talk to counsel about a preliminary hearing, and on 23 March 1970 the Public Defender was appointed by the court to represent him.

The arresting officer, a deputy sheriff, testified that the prosecuting witness was in the hospital for 28 days, that he did talk with defendant's privately retained counsel about having a preliminary hearing and getting the prosecuting witness into court.

Defendant's privately retained counsel testified that he was employed to represent defendant very shortly after defendant's arrest, that he looked into the desirability of having a preliminary hearing, concluded that it would be desirable to have the prosecuting witness present in person and discussed that with defendant. He further testified that the prosecuting witness was in the intensive care unit at the hospital for about 28 days and from the hospital went to the home of a relative in Rockingham County, that as soon as he was able to travel, a preliminary hearing was arranged and held during December. He testified that on one occasion while the prosecuting witness was still in the hospital, the deputy sheriff had him brought to court, but the witness was then himself involved in a matter in superior court and was unable to be there, so the sheriff returned the prosecuting witness to the hospital. He further testified that the deputy sheriff approached him on three other occasions about a preliminary hearing but each time he was involved in a jury trial and could not be present. The witness testified that defendant's parents were informed of the amount of bond defendant

was under and they could not arrange to post bond. Witness tried to get the bond reduced, but because of the seriousness of the charges and the fact that notice of revocation of probation had been filed for offenses prior to these alleged offenses, and the serious condition of the victim, the solicitor would not recommend a reduction in bond. At the revocation of probation hearing, defendant asked for permission to speak for himself and did so. During the course of his testimony he stated to the court that he had never had what he considered to be an adequate psychiatric examination anywhere. Whereupon, counsel requested the solicitor to petition the court for a psychiatric examination. This was done, and the order committing him to Cherry for examination was signed on 16 December 1969. After the defendant was returned from Cherry, he called his counsel. Counsel went to see defendant and advised him that his parents had not been able to pay his fee and suggested that he attempt to secure the services of the Public Defender. Counsel subsequently, on his own motion, was allowed to withdraw and turned his file over to the Public Defender.

The prosecutor testified that a hearing on the bond was never asked for but that he had advised defendant's counsel that his recommendation would be an increase rather than reduction. That Judge Alexander kept insisting that the man be brought before her for a speedy hearing, but that "we kept explaining that the man was in the hospital." During the 40-day period the prosecuting witness was brought to court one time by ambulance, but defendant's counsel was not available.

We perceive no error in the court's denial of defendant's motions. It appears unquestionably that defendant was represented by counsel from very shortly after his arrest. It also appears unquestionably that no request for a hearing on his bond was made. His counsel, after investigation, wisely decided not to attempt a vain thing. The circumstances were that the solicitor would not recommend reduction, the probation officer would not recommend bond at all, and defendant's parents had stated their inability to post bond. It appears that in this case, a preliminary hearing was afforded this defendant just as soon as feasible under the circumstances.

[2] It also appears that the order committing him to Cherry Hospital for psychiatric evaluation was entirely proper. In fact, the inference is that it was done as a result of his own suggestion and on request of his counsel.

[3] The record is silent as to the date of his return from Cherry Hospital and the date of his admission there. He says and the record shows that the order was signed on 16 December 1969 and that he stayed there for 77 days. He was tried at the April 1969 Session of the Guilford Superior Court. Justice Sharp, in *State v. Johnson,* 275 N.C. 264, 167 S.E. 2d 274 (1969), set out the following principles established by decisions of the Supreme Court of this State applicable to determination of whether a defendant has been denied a speedy trial:

"1.    The fundamental law of the State secures to every person *formally accused* of crime the right to a speedy and impartial trial, as does the Sixth Amendment to the Federal Constitution (made applicable to the State by the Fourteenth Amendment, *Klopfer v. North Carolina,* 386 U.S. 213, 18 L. Ed. 2d 1, 87 S. Ct. 988 (1967)).

2.    A convict, confined in the penitentiary for an unrelated crime, is not excepted from the constitutional guarantee of a speedy trial of any other charges pending against him.

3.    Undue delay cannot be categorically defined in terms of days, months, or even years; the circumstances of each particular case determine whether a speedy trial has been afforded. Four interrelated factors bear upon the question: the length of the delay, the cause of the delay, waiver by the defendant, and prejudice to the defendant.

4.    The guarantee of a speedy trial is designed to protect a defendant from the dangers inherent in a prosecution which has been negligently or arbitrarily delayed by the State; prolonged imprisonment, anxiety and public distrust engendered by untried accusations of crime, lost evidence and witnesses, and impaired memories.

5.    The burden is on an accused who asserts the denial of his right to a speedy trial to show that the delay was due to the neglect or willfulness of the prosecution. A defendant who has himself caused the delay, or acquiesced in it, will not be allowed to convert the guarantee, designed for his protection, into a vehicle in which to escape justice. *State v. Hollars,* 266 N.C. 45, 145 S.E. 2d 309; *State v. Lowry,* 263 N.C. 536, 139 S.E. 2d 870, *appeal dismissed,* 382 U.S. 22, 15 L. Ed. 2d 16, 86 S. Ct. 227 (1965) ; *State v. Patton,* 260 N.C. 359, 132 S.E. 2d 891, *cert. denied,* 376 U.S. 956, 11 L. Ed. 2d 974, 84 S. Ct. 977 (1964) ; *State v. Webb,* 155 N.C. 426, 70 S.E. 1064."

Applying these principles to the circumstances of this case, we come to the inescapable conclusion that the trial court did not commit error in denying defendant's motions. Certainly defendant has not shown that any delay was due to the neglect or willfulness of the prosecution, nor is there any showing that witnesses were not available or memories impaired by reason of any delay.

[4]  Assignments of error Nos. 5, 8, 11 and 12 are addressed to the court's allowing testimony and the introduction of exhibits all pertaining to evidence obtained at the time of defendant's arrest. Defendant contends that the arrest was based on an illegal identification and the search was, therefore, illegal and no evidence obtained incident to the arrest admissible. The arresting officer testified that he talked with the prosecuting witness at the hospital, at which time the prosecuting witness stated that he had picked up the man who shot and robbed him at the General Greene, that he gave him a general description of the man, said he did not know his name but could identify him. He further testified that a waitress at the General Greene whose name was Doris would know who the man was with whom he left the General Greene. On *voir dire,* the officer testified that he then went and talked with the waitress who told him that the prosecuting witness and Bobby Hatcher left the General Greene together. The officer then obtained a photograph of Hatcher from the Greensboro Police Department and returned to the hospital. He told the prosecuting witness he had a picture he would like him to look at and when he looked at the picture he said "That is the man who shot and robbed me." The photo bore the notation "Greensboro Police Department 1967." The officer further testified that the prosecuting witness identified Hatcher at the preliminary hearing.

Defendant contends that the arrest was based on the identification of the photograph by Brown and was, therefore, illegal, and the evidence obtained incident to the arrest excludable. We do not agree. The victim described his assailant and his stolen automobile to the officer and told the officer whom to contact to obtain the assailant's name. The officer did in fact obtain his name from the waitress. As a matter of fact, the prosecuting witness testified, prior to *voir dire* and without objection, that he told the officer that the waitress called his assailant Bobby Hatcher. After the officer had determined who the assailant was, he exhibited the photograph to the prosecuting witness. He then went to defendant's home, saw the automobile of the

victim there, and went and obtained a warrant for defendant's arrest. It seems obvious that the officer was only taking every precaution to be certain that he arrested the right man. The precautions taken were for defendant's protection. In-court identification is not the question before us. Here there was no in-court identification as such. The question is whether the arrest was legal. If there was probable cause for the arrest of defendant, the arrest was legal.

> "Probable cause exists where 'the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. *Carroll v. United States*, 267 US 132, 162, 69 L ed 543, 555, 45 S Ct 280, 39 ALR 790." *Draper v. U.S.*, 358 U.S. 307, 313, 3 L. Ed. 2d 327, 332, 79 S. Ct. 329 (1959).

Under the facts and circumstances of this case, the officer had probable cause for the issuance of a warrant. Nor do we think that the use of the photograph in this case "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. U.S.*, 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968). We are not here dealing with proof of guilt. In dealing with probable cause, the law enforcement officers necessarily deal with probabilities. "These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Draper v. U.S., supra.*

Finding, as we do, that the arrest was legal, and the search incident thereto valid, it follows that the evidence seized as the result of the search was competent evidence lawfully received at trial and properly referred to in the charge of the court. These assignments of error are overruled.

[5] Defendant also contends that the court erred in charging the jury on the "doctrine of recent possession." The basis for this contention, which is defendant's assignment of error No. 22, is that the State had not shown defendant in possession of the automobile. This contention is untenable. The uncontradicted evidence was that the automobile of prosecuting witness had been stolen, that some four or five hours later the automobile was found parked at defendant's residence, that an automobile key and chain were found on his person, that the key and chain were identified by the prosecuting witness as being his,

and the key fitted the automobile's ignition and the motor started when the key was inserted and turned. In our opinion the evidence was sufficient to place the automobile in the exclusive possession, custody, and control of defendant. This assignment of error is overruled.

[6]  By assignment of error No. 10, defendant insists that the trial court committed prejudicial error in admitting into evidence and allowing to be exhibited to the jury a photograph of defendant which was the property of the Greensboro Police Department. On *voir dire,* the arresting officer testified that when showed to the prosecuting witness the picture showed a board or plaque around the subject's neck which gave a date, that the date on this picture was 11/67, and the words "Police Department, Greensboro" appeared thereon. The court allowed the photograph in evidence, but while the jury was still out, directed that the words on the board or plaque around the subject's neck be cut off and the photograph then returned to the courtroom. This effectively removed defendant's objection.

[7, 8]  After the jury returned its verdict, defendant moved in arrest of judgment. "A motion in arrest of judgment is one made after verdict and to prevent entry of judgment, and is based upon the insufficiency of the indictment or some other fatal defect appearing on the face of the record." *State v. Higgins,* 266 N.C. 589, 146 S.E. 2d 681 (1966). The record shows that defendant was convicted of armed robbery and assault with a deadly weapon. We are of the opinion that the judgment on the verdict of guilty of assault with a deadly weapon should have been arrested. See *State v. Midyette,* 270 N.C. 229, 154 S.E. 2d 66 (1967). "An indictment for robbery with firearms will support a conviction of a lesser offense such as common law robbery, assault with a deadly weapon, larceny from the person, simple larceny or simple assault, if a verdict for the included or lesser offense is supported by the evidence on the trial. *S. v. Bell,* 228 N.C. 659, 46 S.E. 2d 834; *S. v. Holt,* 192 N.C. 490, 135 S.E. 324." *State v. Davis,* 242 N.C. 476, 87 S.E. 2d 906 (1955). The defendant, having been convicted of armed robbery, could not be convicted of the lesser offense of assault with a deadly weapon where, as here, both offenses arose out of the same act or occurrence. *State v. Midyette, supra.*

[9]  Assignment of error No. 23 is directed to the failure of the court to charge the jury on common law robbery. Defendant testified that he hit the prosecuting witness on the head with a

7-Up bottle when the prosecuting witness had pulled a gun on him and while prosecuting witness had his hand on defendant's leg. He further testified that after he used the bottle to defend himself and after the ensuing scuffle, he ran from the scene and as he ran he heard some shots; that Larry Wilson, who was in the rear seat of the car, must have driven the car from the scene, because Wilson picked up defendant and they later returned to ascertain whether the prosecuting witness had been hurt but could not find him. Defendant's evidence, if believed, furnishes an alibi. His testimony, if believed, puts him somewhere away from the scene of the shooting and the robbery. Under this evidence the court correctly charged the jury that they could find defendant guilty of armed robbery or not guilty. There was no evidence necessitating or justifying a charge on common law robbery. *State v. Jones*, 264 N.C. 134, 141 S.E. 2d 27 (1965); *State v. Parker*, 7 N.C. App. 191, 171 S.E. 2d 665 (1970).

Defendant's remaining assignments of error are directed to the charge of the court with respect to the assault charge. In view of the fact that judgment on this charge has been arrested, we deem it unnecessary to discuss them.

The verdict of guilty of assault with a deadly weapon (No. 69Cr66541) is set aside and the judgment arrested.

Armed robbery charge (No. 69Cr66542)—no error.

BROCK and GRAHAM, JJ., concur.