James **FARRINGTON**, Petitioner,

v.

**STATE OF NORTH CAROLINA, and D. C. Lewis, Supt., Caledonia Corr. Inst., Respondents.**

No. C–74–143–G.

United States District Court, M. D. North Carolina, Greensboro Division.

March 25, 1975.

James Farrington, pro se.

Jacob L. Safron, Asst. Atty. Gen., for the State of N. C., Raleigh, N. C., for respondents.

### MEMORANDUM OPINION AND ORDER

GORDON, Chief Judge.

The petitioner is a prisoner of the State of North Carolina. He has filed here an application for a writ of habeas corpus and has been allowed to proceed without the prepayment of fees. 28 U. S.C. § 1915(a). The respondents have answered the petition and moved to dismiss and the petitioner has filed a response to that pleading.

In his original petition, the petitioner alleged the following constitutional infringements:

(1) He was not told of his right to appeal.

(2) He was not tried within eight months as required by N.C.Gen. Stat. § 15–10.2.

(3) His plea of guilty was entered involuntarily because of the ineffective assistance of counsel.

When the petitioner responded to the respondents' motion to dismiss, he added the allegation that he is being denied access to the courts because the State of North Carolina does not furnish law libraries for its prisoners.

For the reasons which follow, this Court finds the allegations of constitu-

tional infringement to be without merit. The action will be dismissed.

On November 8, 1968, in Orange County, North Carolina, the petitioner was sentenced for forgery. On October 21, 1970, he was paroled. Subsequently, on March 8, 1971, he was charged with armed robbery. Two days later, he was charged with arson. Five days later, March 15, 1971, his parole was revoked and he was returned to prison. At its April 26, 1971 session, the Orange County Grand Jury indicted the petitioner for armed robbery. Thereafter, on September 14, 1971, the Clerk of the Orange County Superior Court forwarded a detainer to the Department of Correction which was filed September 24, 1971.

On September 24, 1971, the Department of Correction wrote the petitioner, in accordance with the pertinent statute, and informed him of how he might obtain a trial on the charge of armed robbery. Contrary to the instructions he had received from the prison department, the petitioner wrote to the Clerk of Court on September 29, 1971, and asked for an immediate trial on the robbery offense.

Pursuant to the provisions of N.C. Gen.Stat. § 15–10.2, on June 12, 1972, the Department of Correction returned the detainer to the Clerk of the Orange County Superior Court so that the petitioner's status as a prisoner would no longer be affected by the detainer.

One month before he was scheduled for release for the forgery conviction, the petitioner appeared in the Orange County Superior Court and entered a plea of guilty to the lesser included offense of armed robbery, common law robbery, and upon the entry of that plea the solicitor elected to *nol pros* the arson charge for which he had been indicted on July 31, 1972.

The foregoing furnishes the basis of the petitioner's allegations of constitutional infringement numbered (2) and (3).

■ The purpose of N.C.Gen.Stat. § 15–10 is for the protection of persons held without bail. State v. Lowry, 263 N.C. 536, 139 S.E.2d 870 (1965). Under certain circumstances such a prisoner may be discharged from custody. State v. Patton, 260 N.C. 359, 132 S.E.2d 891 (1963). It does not bar further prosecution. The presence of a detainer in a prisoner's file jeopardizes his chances for parole, proper good behavior credits and work release. N.C.Gen.Stat. § 15–10.2 provides such a prisoner with directions for securing a trial on the pending charges. State v. White, 270 N.C. 78, 153 S.E.2d 774 (1967). The State is required to inform him how to proceed. N.C.Gen.Stat. § 15–10.2(b). An inmate must follow the section's requirements. He must send by registered mail a demand to the solicitor. Sending it to the Clerk of the Superior Court unregistered is insufficient, when the solicitor does not know of the demand. State v. White, *supra*.

■ The record before this Court is void of evidence to show that the petitioner properly demanded a speedy trial, that the State failed to make a diligent effort to get a trial for him and that he exhausted state court remedies seeking dismissal of the charges because of the delay. Kane v. State of Virginia, 419 F.2d 1369 (4th Cir. 1970). The petitioner does not show prejudice, United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), he simply urges this Court to rule that since he was not tried within the eight months specified by the statute, he should be released.

■ The petitioner alleges ineffective assistance of counsel for failure to raise this point. He asserts that counsel advised him to enter a plea of guilty to common law robbery because counsel expressed the view that he could "do absolutely nothing for him". Under oath and in open court on August 2, 1972, the petitioner's transcript of his plea to common law robbery shows that he understood the nature of the charges pending against him. He acknowledged his awareness of his right to plead not

guilty and be tried by a jury. He swore he was in fact guilty. The petitioner swore that he knew he could receive as much as ten years imprisonment for the offense upon the entry of his plea of guilty; that he had had time to subpoena witnesses, confer with counsel and was satisfied with his services; that no one had offered him any promises or threatened him to induce the plea of guilty and that he freely, understandingly and voluntarily authorized and instructed his attorney to enter the plea. After being further questioned by the Court, the plea was adjudged to be freely, understandingly and voluntarily made without undue influence, compulsion or duress and without promise of leniency. A plea of guilty voluntarily entered must stand. Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); Tollett v. Henderson, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); cf. Lefkowitz v. Newsome, 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975).

■ After the entry of a plea of guilty, it is not evidence of ineffective assistance of counsel to fail to advise a defendant of his right to appeal. Younger v. Cox, 323 F.Supp. 412, 416–417 (W.D.Va.1971); Collier v. Estelle, 488 F.2d 929, 931 (5th Cir. 1974). A court must know that a criminal defendant is indigent and wishes to appeal. Woods v. Beto, 348 F.Supp. 573 (N.D. Tex.1972).

■ The petitioner's allegation that he is being denied access to the courts for the reason that the respondent does not provide a law library for prisoners requires elaboration.

In Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), the Court ruled that the State of Tennessee could not validly enforce a regulation which absolutely banned inmates from helping other inmates prepare petitions for submission to courts. The crux of the ruling was the premise that prisoners are fundamentally entitled to access to the courts, which right cannot be denied or obstructed. The Court did not invalidate the regulation per se. It ruled that Tennessee could not enforce the regulation without furnishing a reasonable alternative. 393 U.S. 490, 89 S.Ct. 747. The Court took note of some alternatives provided by other states: the use of public defenders, senior law students and local bar associations. 393 U.S. 489, 89 S.Ct. 747.

In Gilmore v. Lynch, 319 F.Supp. 105 (N.D.Cal.1970), the Court was asked to pass on the validity of a prison regulation which established an exclusive list of "basic codes and references" for use by inmates. Also tested was the prison regulation requiring that all legal papers remain within the possession of the inmate to whom they pertained and a state library procedure establishing a restricted list of law books available for prison circulation. The Court found that there was an expertise needed for preparing petitions to be submitted to the Court and that the proposed standard list was inadequate for such use. It required the respondent to expand the list or adopt some new method of satisfying the legal needs of its charges. The other challenged regulation and procedure was not enjoined. This action was affirmed sub nomine, Younger v. Gilmore, 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971), citing Johnson v. Avery.

In 1972, in Hooks v. Wainwright, 352 F.Supp. 163 (M.D.Fla.1972), the Court considered the question:

"Does the state have an affirmative federal constitutional duty to furnish prison inmates with expensive law libraries or to provide inmates with professional or quasi-professional legal assistance?"

Based on the equal protection clause, the Court ruled that the State did have such an obligation and ordered plans presented to implement the ruling.

With deference to the Hooks v. Wainwright Court, this Court feels that Johnson v. Avery, *supra.*, has been extended beyond its intention. *Johnson* had to do with a regulation depriving inmates of the assistance of other inmates in preparing writs. It held that such a regulation, without reasonable alternatives, deprived prospective petitioners access to the courts. It did not, and does not now, require the establishment of law libraries for prisoners.

To propose that states furnish prisoners law libraries is unsound. If established, the library would be used by only a few prisoners; its existence would detract from rehabilitative measures; law libraries are not needed to insure access to courts; and the establishment of law libraries in prisons is not *constitutionally* required.

Those of us who work with prisoner petitions know that they are written by only a very small number of inmates for a very small number of the prison population. There are approximately 12,000 prisoners within the Department of Correction of the State of North Carolina. The Commissioner of Correction has told this Court that 1,200 of the prisoners are hard core criminals who furnish the "business" of the three United States District Courts in this State. Of that 1,200, far less than 100 prepare all the prisoner petitions. The number of inmates who would benefit from the existence and use of the library, assuming for the moment that there might be some benefit, would be minuscule.

As to the question of benefit, those inmates who write petitions, building kingdoms for themselves within the prison walls, do not contribute wholesomely to the rehabilitative function of the institution. Prison administrators verify that such inmates create strife and detract from the success of rehabilitative programs. In Johnson v. Avery, *supra,* the Court wrote:

"It is indisputable that prison 'writ writers' like petitioner are sometimes a menace to prison discipline . . . ." 393 U.S. 488, 89 S.Ct. 750.

The establishment of prison law libraries will not contribute to the rehabilitative process and will not inure to the benefit of anyone or the institution.

While law is not as technical a science, highly educated, devoted judges and practicing attorneys find it difficult to read a statute, a legal treatise or an opinion and determine its precise meaning.

"Jails and penitentiaries include among their inmates a high percentage of persons who are totally or functionally illiterate, whose educational attainments are slight, and whose intelligence is limited. . . ." Johnson v. Avery, *supra,* 393 U.S. 487, 89 S.Ct. 750. The tools of the trade of the legal profession, if furnished to prison inmates, would be put in hands ill equipped to use them.

The question presented in Ross v. Moffitt, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), concerned the appointment of counsel for indigents to perfect appeal. The rationale of this ruling is pertinent to the question of whether or not a state is required by the Constitution to furnish law libraries to prisoners. An antecedent case, Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L. Ed.2d 263 (1972), illuminates the meaning of the *Ross* action and suggests the result the United States Supreme Court may reach when presented squarely with the proposition addressed here.

In Cruz v. Beto, *supra,* the prisoner was a Buddhist who complained that his First Amendment right to religious freedom had been violated. The District Court denied relief and the Appellate Court affirmed. The Supreme Court ruled that Texas had discriminated against him by denying him a reasonable opportunity to pursue his Buddhist faith: provisions for worship by Buddhists were not comparable to those existing for devotees of more conventional precepts. Mr. Justice Rehnquist wrote a dissenting opinion. He wrote:

"What petitioner's basic claim amounts to is that because prison fa-

cilities are provided for denominational services for religions with more numerous followers, the failure to provide prison facilities for Buddhist services amounts to a denial of the equal protection of the laws. . . . *Neither the decisions of this Court after full argument, nor those summarily reversing the dismissal of a prisoner's civil rights complaint have ever given full consideration to the proper balance to be struck between prisoners' rights and the extensive administrative discretion that must rest with correction officials.* I would apply the rule of deference to administrative discretion that has been overwhelmingly accepted in the courts of appeals. . . ." [Emphasis supplied]. 405 U.S. 325, 92 S.Ct. 1083.

Footnote 3 contains the following note: "I do not read Johnson v. Avery, 393 U.S. 483 [89 S.Ct. 747, 21 L.Ed.2d 718] (1969), which was concerned with the prisoners' traditional remedy of habeas corpus, to reach the issue of a *statutory civil cause of action such as 42 U.S.C. § 1983.*" [Emphasis supplied].

Mr. Justice Rehnquist added:

"[*T*]*he 'equal protection of the laws' guaranteed by the Fourteenth Amendment is not to be applied in a precisely equivalent way in the multitudinous fact situations that may confront the courts.* . . ." [Emphasis supplied]. 405 U.S. 325, 92 S.Ct. 1083.

Mr. Justice Rehnquist's dissent in Cruz v. Beto, *supra.*, is significant because of his majority opinion in *Ross.* *Ross* involved the appointment of counsel for *discretionary* appeal. The Court ruled that the *due process clause* of the Fourteenth Amendment does not require North Carolina to provide counsel for the purpose of perfecting a discretionary appeal to the State Supreme Court. The Court also ruled that the *equal protection clause* of the Fourteenth Amendment does not require

North Carolina to provide free counsel for indigent defendants seeking discretionary appeals to the State Supreme Court. Finally, the Court ruled that the Fourteenth Amendment does not require North Carolina to provide counsel for a convicted indigent defendant who seeks to file a petition for certiorari to the United States Supreme Court. Justice Rehnquist quoted from Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L. Ed.2d 811 (1963) and noted that the Douglas Court wrote:

"*But it is appropriate to observe that a State can, consistently with the Fourteenth Amendment, provide for differences so long as the result does not amount to a denial of due process or an 'invidious discrimination.' Absolute equality is not required; lines can be and are drawn and we often sustain them.*" [Cites omitted, emphasis supplied]. Ross, 417 U.S. 608, 94 S.Ct. 2443.

After recounting the necessity for counsel at the trial stage required by the due process clause, Mr. Justice Rehnquist wrote:

"By contrast, it is ordinarily the defendant, rather than the State who initiates the appellate process, seeking not to fend off the efforts of the State's prosecutor but rather to overturn a finding of guilt made by a judge or jury below. The defendant needs an attorney on appeal not as a shield to protect him against being 'haled into court' by the State and stripped of his presumption of innocence, but rather as a sword to upset the prior determination of guilt. This difference is significant for, while no one would agree that the State may simply dispense with the trial stage of proceedings without a criminal defendant's consent, it is clear that *the State need not provide any appeal at all.* McKane v. Durston [153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894)]. The fact that an appeal *has* been provided does not automatically mean that a State then acts unfairly

by refusing to provide counsel to indigent defendants at every stage of the way. Douglas v. California, supra. *Unfairness results only if indigents are singled out by the State and denied meaningful access to the appellate system because of their poverty.* . . ." [Emphasis supplied]. 417 U.S. 610–11, 94 S.Ct. 2444.

In analyzing the equal protection requirement of counsel for purposes of discretionary appeal, the Court wrote:

"Despite the tendency of all rights 'to declare themselves absolute to their logical extreme,' there are obviously limits beyond which the equal protection analysis may not be pressed without doing violence to principles recognized in other decisions of this Court. *The Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,' nor does it require the State to 'equalize economic conditions.'* It does require that the state appellate system be 'free of unreasoned distinctions,' and that indigents have an adequate opportunity to present their claims fairly within the adversarial system. The State cannot adopt procedures which leave an indigent defendant 'entirely cut off from any appeal at all,' by virtue of his indigency, or extend to such indigent defendants merely a 'meaningless ritual' while others in better economic circumstances have a 'meaningful appeal.' The question is not one of absolutes, but one of degrees. In this case we do not believe that the Equal Protection Clause, when interpreted in the context of these cases, requires North Carolina to provide free counsel for indigent defendants seeking to take discretionary appeals to the North Carolina Supreme Court, or to file petitions for certiorari in this Court."

[Cites omitted, empasis supplied]. 417 U.S. 611–12, 94 S.Ct. 2445.

And finally at 417 U.S. 616, 94 S.Ct. 2447, the Court wrote:

"*[T]he fact that a particular service might be of benefit to an indigent defendant does not mean that the service is constitutionally required. The duty of the State under our cases is not to duplicate the legal arsenal that may be privately retained by a criminal defendant in a continuing effort to reverse his conviction, but only to assure the indigent defendant an adequate opportunity to present his claims fairly* . . ." [Emphasis supplied].

If the state need not provide an appeal, nor appoint counsel for permissive appeals, if the state is not required to equalize economic conditions and is not mandated to provide elective benefits, it is not required by the Constitution to furnish law libraries for prisoners. If it chooses to do so, it must be done fairly, Gilmore v. Lynch, *supra*, and has the burden of proof justifying its action. Novak v. Beto, 453 F.2d 661 (5th Cir. 1971).

To hold that a state is constitutionally mandated to guarantee *access to courts* by furnishing law libraries to prisoners is not consistent with fact. Obviously, neither is expertise required. In McCray v. Burrell, 367 F.Supp. 1191, 1193–1194 (D.Md.1973), Chief Judge Northrop wrote:

"A look at the Annual Report of the Director of the Administrative Office of the United States Courts for the fiscal year ending June 30, 1972 and the Semi-annual Report of the Director for the first half of fiscal 1973, lend statistical evidence to our conviction that there is little hope of relief from the swelling ranks of petitioning prisoners. At the appellate level, nearly 31% of the prisoner appeals filed nationwide were filed in the United States Court of Appeals for the Fourth Circuit in fiscal 1972. This percentage rose to 36.1% during the first half of 1973. More importantly, prisoner cases accounted for 38% of all cases filed with the Fourth Circuit in 1972, and for 45.3% for the first part of 1973.

"Of greater moment for our purposes is the number of civil rights petitions filed by prisoners in the United States District Courts. In fiscal 1972, 252 civil rights petitions were filed by federal prisoners (an increase of 1,580% over 1961, and an increase of 17.8% over 1971), and 3,348 were filed by state prisoners (an increase of 1,435.8% over 1961, and an increase of 14.9% over 1971). During the first half of fiscal 1973, 155 civil rights actions were instituted by federal prisoners, and 1,891 were filed by state prisoners.

"Although it cannot be denied that direct federal judicial intervention has, in recent years, served to remedy the worst examples of retrogressive American penology (as in the infamous Tucker Farm of Arkansas, *see* Jackson v. Bishop, 404 F.2d 571 (8th Cir. 1968)), the time has come to take a careful and critical look at the continued validity of the sweeping interpretation which has caused § 1983 to be read as a mandate to federal courts and forces them to accept all but the most patently ridiculous complaints from state prisoners, no matter how hard or how successfully the state has tried to set its own prison house in order."

The appointment of counsel to advise with prisoners and prepare and file meritorious actions would be far more beneficial than providing them with law libraries. It would compliment rather than be in derogation of rehabilitative programs. It would tend to stimulate respect for judicial review and the orderly processes of the law now obviously contemned by the prolific writ writer. Similar to the general practice in federal courts, Johnson v. Avery, *supra*, North Carolina appoints counsel for indigents for post-conviction proceedings. N.C.Gen.Stat. § 7A–451(a)(3). And currently, a study committee is proposing a plan for legal aid to all persons—in or out of prison—unable to afford counsel.

North Carolina does not prohibit inmates from preparing writs for others. Therefore, it has not been required to establish a reasonable alternative. It has not embarked upon the hazardous task of furnishing "adequate" law libraries, with "adequate" access, "adequate" circulation, and with "adequate" replacement procedures. Therefore, they need not establish law libraries for prisoners.

## ORDER

For the foregoing reasons, the action is dismissed.

In accordance with this Court's liberal policy relative to the filing of actions in forma pauperis, 28 U.S.C. § 1915, and in accordance with the intent of Rule 24, Federal Rules of Appellate Procedure, if the petitioner desires to do so, permission to appeal in forma pauperis is hereby granted.